DECISION AND JOURNAL ENTRY
Defendant Jeffery D. Smathers has appealed his conviction from the Summit County Common Pleas Court. This Court affirms.
 I.
On July 26, 1999, Defendant, stepfather of the victim, Bethanie, was indicted by the Summit County Grand Jury on the following counts: murder, a violation of R.C. 2903.02; involuntary manslaughter, a violation of R.C. 2903.04(A); felonious assault, a violation of R.C.2903.11(A)(1); and, two counts of child endangering, violations of R.C.2919.22(A) and (B)(2). On September 28, 1999, Defendant received a supplemental indictment for one count of felony-murder, pursuant to R.C.2903.02(B). Defendant entered a plea of not guilty and the case proceeded to trial before a jury. The jury found Defendant guilty of felonious assault, two counts of child endangering, and felony-murder and acquitted him of the remaining charges. The trial court sentenced Defendant to a term of fifteen years to life for the felony-murder conviction, three years for felonious assault, and three years for endangering children, to be served consecutively. Defendant timely appealed, asserting six assignments of error.
 II. A. Assignment of Error Number One The trial court committed prejudicial error in denying Defendant's motion to suppress statements given to the Akron Police Department, in violation of Defendant's rights as guaranteed to him by the Fifth and Fourteenth Amendments to the U.S. Constitution.
In his first assignment of error, Defendant has asserted that his constitutional right against self-incrimination was violated when the Akron police officers questioned him. Essentially, Defendant has argued that because his freedom to move in his apartment was restricted, the officers should have read the Miranda warning before questioning him. This Court disagrees.
The Fifth Amendment to the United States Constitution provides persons with a privilege against compelled self-incrimination. Pursuant toMiranda v. Arizona (1966), 384 U.S. 436, 471-472, 16 L.Ed.2d 694, 722, an individual must be advised of his or her constitutional rights when law enforcement officers initiate questioning after that person has been taken into custody or otherwise deprived of his or her freedom in any significant way. Once the police begin a custodial interrogation, they must use procedures to warn defendants of their right to remain silent and their right to counsel. Id. Miranda procedures are only invoked when both custody and interrogation coincide. State v. Wiles (1991),59 Ohio St.3d 71, 83.
It is the custodial nature of the interrogation that triggers theMiranda holding. Beckwith v. United States (1976), 425 U.S. 341, 346,48 L.Ed.2d 1, 7. A suspect is entitled to Miranda warnings only when there is a restraint on freedom of movement of the degree associated with a formal arrest. California v. Beheler (1983), 463 U.S. 1121, 1125,77 L.Ed.2d 1275, 1279. The test for determining whether a particular individual was "in custody" during police questioning depends on "whether, under the totality of the circumstances, a `reasonable person would have believed that he was not free to leave.'" State v. Gumm (1995), 73 Ohio St.3d 413, 429, quoting United States v. Mendenhall (1980), 446 U.S. 544, 554, 64 L.Ed.2d 497, 506 (plurality opinion).
At the suppression hearing, Officer John Bell testified that he was the first police officer to arrive at Defendant's house on July 13, 1999. He stated that he only asked Defendant general informational questions to determine what happened. Officer Bell asked Defendant to have a seat on the couch because he was pacing back and forth. He stated that Defendant was free to leave and he even left at one point to change his son's diaper. Officer Bell testified that Defendant did not need to request permission to leave his apartment.
Detective Robert Bennett also testified at the suppression hearing. Detective Bennett asked Defendant general questions concerning the spelling of his name, his social security number, and his date of birth. He also asked Defendant what happened. Detective Bennett remembered that the questioning only lasted two or three minutes and that he immediately stopped questioning Defendant when Detective Bennett became suspicious. He also explained that it was normal for a police officer to stay in the apartment at all times during an investigation in order to secure a possible crime scene.
Next, Detective Terrence Hudnall testified that he arrived at the apartment before 7:00 pm. He recalled that from the time of his arrival, no other officers questioned Defendant. Detective Hudnall only asked Defendant if he would be willing to come down to the police station and make a formal statement. He told Defendant that he was not under arrest and that he would arrange for a ride to the station. Detective Hudnall stated that Defendant agreed to go to the police station.
At the police station Detective Donald Gaines informed Defendant that Bethanie had died. He then read Defendant his Miranda warnings and indicated that he wanted to ask Defendant some questions regarding Bethanie's death. At this point, Defendant voluntarily stated that he would cooperate and provided Detective Gaines with a full statement. Lastly, Detective Gaines testified that Defendant had not been hand cuffed and the door to the interview room was not locked.
Based on the foregoing, this Court does not find the initial statements by Defendant to have been made in a "custodial" context. Although there was a police officer present in the apartment at all times, Defendant's freedom was not restrained. See State v. Perry (Oct. 9, 1996), Summit App. No. 17754, unreported. Therefore, Defendant's constitutional right against self-incrimination was not violated. His first assignment of error is overruled.
 B. Assignment of Error Number Two The trial court committed prejudicial error by denying Defendant's pretrial motion to dismiss count six of the indictment herein, which count charged Defendant with murder pursuant to [R.C. 2903.02(B)], in violation of Defendant's rights as guaranteed to him by the Fifth, Sixth, and Fourteenth amendments to the U.S. Constitution.
In his second assignment of error, Defendant has argued that the trial court committed prejudicial error when it overruled his motion to dismiss count six of his indictment. In his motion, Defendant had challenged the constitutionality of R.C. 2903.02(B), claiming the statute eliminates a culpability requirement and the role of the jury as a fact-finder. This Court disagrees.
R.C. 2903.02(B), effective June 30, 1998, states that "[n]o person shall cause the death of another as a proximate result of the offender's committing * * * an offense of violence that is a felony of the first or second degree and that is not a violation of [R.C. 2903.03 or 2903.04]." R.C. 2903.11 defines felonious assault as "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *."
As a preliminary matter, it is noted that this Court has never previously addressed the constitutionality of R.C. 2903.02(B). However, the Eleventh District Court of Appeals in State v. Hayden (July 14, 2000), Lake App. No. 99-L-037, unreported, found R.C. 2903.02(B) to be constitutional. In Hayden, the court determined that the State satisfied the culpability element by proving the intent of the underlying felony.Id. Moreover, R.C. 2903.02(B) does not eliminate the role of the jury as the fact-finder because the jury must still determine whether the State proved beyond a reasonable doubt the elements of the underlying felony. Based on the foregoing, this Court adopts the approach of the Eleventh District and finds R.C. 2903.02(B) to be constitutional. Accordingly, Defendant's second assignment of error is overruled.
 C. Assignment of Error Number Three Each of the guilty verdicts in the instant case was against the manifest weight of the evidence at trial herein, and accordingly in violation of Defendant's rights as guaranteed to him by the Fourteenth Amendment to the U.S. Constitution.
 Assignment of Error Number Four Defendant's convictions herein are based on insufficient evidence, and should therefore be reversed, and final judgment entered for Defendant. These convictions, not supported by sufficient evidence, are in violation of Defendant's right to Due Process [as] guaranteed to him by the Fourteenth Amendment to the U.S. Constitution.
In his third and fourth assignments of error, Defendant has asserted that his conviction was against the manifest weight of the evidence. Defendant has also argued that the trial court erred in not granting his motion for acquittal. This Court disagrees.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
"[A]s an initial matter, * * * evaluations of the sufficiency of the evidence put forth by the state and the weight of the evidence adduced at trial are separate and legally distinct determinations." State v.Gulley (Mar. 15, 2000), Summit App. No. 19600, unreported. To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; see, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 386
("`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law").
While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion.Id. at 390 (Cook, J. concurring). In determining whether the State has met its burden of persuasion, a reviewing court does not view the evidence in the light most favorable to the State. Gulley, supra. Instead, a reviewing court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. A new trial is warranted only in the exceptional case where the evidence weighs heavily in favor of the defendant. Id.
As previously mentioned, R.C. 2903.02(B), states that "[n]o person shall cause the death of another as a proximate result of the offender's committing * * * an offense of violence that is a felony of the first or second degree and that is not a violation of [R.C. 2903.03 or 2903.04]." R.C. 2903.11 defines felonious assault as "[n]o person shall knowingly * * * [c]ause serious physical harm to another[.]"
Further, R.C. 2919.22 provides, in pertinent part:
 (A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.
 (B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
* * *
(2) Torture or cruelly abuse the child[.]
At trial, the police officers testified as to their investigation, in particular, regarding their conversations with Defendant as discussed in the first assignment of error. Paramedics Michael Kranek and Eula Roberts testified to Bethanie's condition upon their arrival and their efforts to save her life. According to the report of the paramedics, Defendant stated that he accidentally fell on Bethanie's chest. They found Bethanie lying on the bed unresponsive and could tell by looking at her that she was gravely ill. Bethanie's color was very pale and ashen. She had no pulse and was barely breathing. They immediately started performing CPR on the way to the hospital. The paramedics noticed some old bruises on Bethanie's back, buttocks, legs and arms and what appeared to be a fresh bruise on the front part of her chest.
Bethanie's father, Mark Gardner, and her paternal great-grandmother testified that they last saw Bethanie on June 28, 1999, during their normal Monday visitation. The great-grandmother testified that on that day she observed a large mark along Bethanie's spine and a red burn-like lesion on her chin. She said that Bethanie limped and complained that her foot hurt. Both Mark and the great-grandmother testified that they considered taking Bethanie to the hospital for an examination because of the suspicious injuries, but decided that they would do it when they saw her on the next weekly visit. However, on Monday, July 5, holiday celebrations prevented their visit. On Monday, July 12, the day before Bethanie died, her mother told Mark that he could not see the girls because they had a doctor's appointment. A neighbor testified that she never saw the children playing outside, but that one or two days prior to Bethanie's death, she saw the family getting into their car and noticed that Bethanie had a black eye.
The medical examiner provided the following testimony about his autopsy results. The cause of death was a blunt force trauma to the abdomen, lacerating the liver and causing internal bleeding. Bethanie could not have survived for more than fifteen to thirty minutes following the blow. Bethanie also had a large contusion on the back of her head hidden by her hair and there was a large hemorrhage beneath the surface. This injury occurred between one and eight hours before Bethanie's death. Bethanie had numerous other bruises, some fresh and some aging. The bruise on her cheek near the eye was inflicted by a hit with a cylindrical object one to two days prior to death. Several bruises on Bethanie's arms were at least thirty-six hours old. Some of the injuries to the back were more than several days old, and a large tan area along the spine was a lesion several weeks old. One fresh bruise on the left buttock was caused by a strike with a cylindrical object. Several other bruises on the buttocks were several days old. Bethanie also had a broken left ankle, from approximately six weeks earlier, severe enough to cause Bethanie to limp before the ankle healed. The medical examiner testified that anyone observing Bethanie walk would know that her ankle was injured. The photographs taken at the time of the autopsy showed numerous bruises on various areas of Bethanie's body, the large laceration under the scalp line, and two lacerations on the chin. The bruise on the right cheek near the eye was very large and yellowing.
For his part, Defendant offered the testimony of his parents, two of Bethanie's preschool teachers, Dr. James Brennan, and neighbors who did not notice any unusual marks or bruises on the child as well as testifying in his own behalf. Defendant's father testified that he observed an injury to Bethanie's back that resembled a rug burn around July 4, but was not alarmed. Defendant's mother further added that Bethanie always had small bruises. She recalled that on one occasion Bethanie walked into the living room and fell over an ottoman. Both of Bethanie's teachers acknowledged that they had last seen her at the end of school, which was six weeks prior to her death.
Dr. James Brennan, a licensed dentist, testified that he examined Bethanie the day before her death. He noticed a bruise on her right cheek below her right eye. He asked Bethanie's mother about the bruise and was satisfied with her explanation. After looking at a photograph of Bethanie on the day she died, Dr. Brennan testified that the bruise on her face was inflicted after Bethanie left his office. He stated that the old bruise was faded and underneath the more recent bruise.
Defendant testified that on the night in question he met his wife out in the parking lot of their apartment. He walked her to her car and then went into the apartment. As he walked into the apartment, Defendant heard Bethanie screaming and crying. He walked down the hallway calling her name. Defendant opened the door to his bedroom and saw her jumping on the bed. He called out her name and she fell off the bed, landing on her back. Defendant tried to catch her, but stumbled and landed on Bethanie. Defendant was not sure whether his foot or knee hit Bethanie's chest. As he picked her up, Bethanie was wheezing and gasping for breath. He pulled up her shirt and noticed a big bruise on her chest. Defendant immediately called "911" for assistance. Lastly, Defendant acknowledged that Bethanie had a mark on her back and a bruise on her face. Defendant testified that Bethanie always had bruises because she was clumsy.
After thoroughly reviewing the record, this Court concludes that a rational trier of fact could have found that Defendant knowingly caused physical harm to Bethanie, which was the proximate cause of her death; that Defendant's actions created a substantial risk to the health or safety of Bethanie; and that Defendant cruelly abused Bethanie. Although there were inconsistencies in the testimony presented at trial, this Court will not overturn a judgment simply because the trier of fact preferred one version of the testimony over the other. See State v.Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported. Additionally, the evaluation of the weight to be given to the evidence and the evaluation of the credibility of the witnesses are functions primarily reserved for the trier of the fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus. The jury heard several witnesses testify concerning the extensive bruises that covered Bethanie's body. The State presented photographs of Bethanie's abused body. The medical evidence indicated that many of the bruises were at least one day old. Defendant acknowledged that he fell on Bethanie's chest. The autopsy results established the cause of death resulted from a blunt force to the abdomen, which lacerated the liver. This Court concludes that the jury did not lose its way in finding Defendant guilty. Indeed, this is not a case where the evidence weighs heavily in Defendant's favor. Defendant's third and fourth assignments of error are overruled.
 D. Assignment of Error Number Five The trial court, at sentencing herein, committed prejudicial error against Defendant by overruling [Defendant's] motion to treat the various offenses herein as allied offenses of similar import, pursuant to R.C. 2941.25(A) in violation of Defendant's rights as guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.
In his fifth assignment of error, Defendant has argued that the trial court erred when it denied his motion to merge his sentences. First, Defendant has asserted that his conviction for felonious assault should merge with his conviction for murder because felonious assault is an element of murder. Next, Defendant has argued that his two convictions of endangering children are allied offenses of similar import. This Court will discuss each of Defendant's arguments in turn.
R.C. 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
Recently, the Ohio Supreme Court ruled that the elements of alleged allied offenses are to be compared in the abstract, overruling prior cases and language to the contrary. State v. Rance (1999),85 Ohio St.3d 632, paragraph one of the syllabus. Under Rance, a court should align the elements of each crime in the abstract, to determine whether the statutory elements of the crimes correspond to such a degree that "the commission of one crime will result in the commission of the other." (Citation omitted.) Id. at 638. "[I]f the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus." Id. at 638-639.
 Defendant's Convictions for Child Endangering
In comparing the elements of R.C. 2919.22(A) and (B) in the abstract, this Court concludes that the two counts of child endangering are not allied offenses because the commission of one will not automatically result in the commission of the other. A person can breach a duty of care without torturing or abusing the child, and a person can abuse a child without breaching a duty of Ccare. Because these offenses are not similar on an abstract comparison, this Court need not determine whether Defendant committed the crimes separately or with separate animus. Accordingly, Defendant's argument is not well taken.
 Defendant's Convictions for Felonious Assault and Murder
Assuming, arguendo, that felonious assault, pursuant to R.C. 2903.11, and murder, pursuant to R.C. 2903.02(B), are allied offenses of similar import[1] the evidence in this case demonstrates that Defendant's actions constituted separate and distinct crimes. The State presented testimony from several witnesses who observed extensive bruises that covered Bethanie's body. The evidence indicated that Bethanie had a large contusion on the back of her head, which resulted in a large hemorrhage beneath the surface. This injury, although severe, was not the result of Bethanie's death. Bethanie had another fresh bruise on her left buttock that was caused by a strike with a cylindrical object. Again, this was not the cause of Bethanie's death. The autopsy report established that Bethanie died from a blunt force trauma to her abdomen, which lacerated her liver and caused internal bleeding. Based on the fact that the severe bruises on Bethanie's head and other parts of her body were not connected to the trauma which resulted in her death, the bruises are separate offenses of felonious assault for which Defendant could face conviction and sentence pursuant to R.C. 2941.25(B). Accordingly, Defendant's fifth assignment of error is overruled.
 E. Assignment of Error Number Six The verdict of guilty returned by the jury on the murder count herein is inconsistent with the not guilty verdict for the count of involuntary manslaughter; Defendant should accordingly be granted a new trial. Further, these inconsistent verdicts denied Defendant his right to Due Process as guaranteed to him by the Fourteenth Amendment to the U.S. Constitution.
In his sixth assignment of error, Defendant has asserted that it was inconsistent for the jury to have rendered an acquittal verdict on the involuntary manslaughter count and a conviction on the more serious murder charge as a result of committing the felonious assault. Defendant has further asserted that his convictions for endangering Bethanie are inconsistent with his conviction for murder because the alleged abuse would certainly have contributed to her ultimate death. This Court disagrees.
As discussed in the third and fourth assignments of error, this Court found no reason to conclude that the jury's verdicts were inconsistent based upon the record in this case. Moreover, even if such an inconsistency was apparent, that inconsistency would not, under Ohio law, mandate a reversal of Defendant's conviction. In criminal cases, as opposed to civil, "Ohio follows the general rule that consistency between verdicts on the several counts of an indictment is unnecessary where the defendant is convicted on one or some counts and acquitted on others, and the conviction will generally be upheld irrespective of its rational incompatibility with the acquittal." State v. Woodson (1985),24 Ohio App.3d 143, 143-144, citing State v. Adams (1978),53 Ohio St.2d 223, vacated on other grounds (1978), 439 U.S. 811,58 L.Ed.2d 103.
As the United States Supreme Court explained in United States v.Powell (1984), 469 U.S. 57, 83 L.Ed.2d 461:
 [I]nconsistent verdicts * * * should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on [one] offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [other] offense.
* * *
 [T]here is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled. Respondent is given the benefit of her acquittal on the counts on which she was acquitted, and it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted.
469 U.S. at 65, 69, 83 L.Ed.2d at 468, 471. Accordingly, Defendant's sixth assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________________ DONNA J. CARR
SLABY, J., WHITMORE, J., CONCUR.
[1] Because the convictions in this case arose from separate conduct, this Court will express no opinion at this time on whether R.C. 2903.02(B) and 2903.11 constitute allied offenses of similar import.