# UNITED STATES v. POWELL

No. 83–1307.   Argued November 5, 1984—Decided December 10, 1984

Rehnquist, J., delivered the opinion for a unanimous Court.

*Mark I. Levy* argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Assistant Attorney General Trott, Deputy Solicitor General Frey,* and *Sara Criscitelli.*

*John J. Cleary,* by appointment of the Court, 467 U. S. 1239, argued the cause and filed a brief for respondent.

Justice Rehnquist delivered the opinion of the Court.

In *Dunn* v. *United States,* 284 U. S. 390 (1932), this Court held that a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count. We granted certiorari in this case to determine

whether the Court of Appeals for the Ninth Circuit correctly enunciated an exception to *Dunn* when it overturned respondent's convictions. 467 U. S. 1203 (1984).

In 1982, respondent Betty Lou Powell's husband, Ron Powell, aided by his 17-year-old son Jeff and others, was operating a lucrative cocaine and methaqualone distributorship from the Powell home near San Diego, Cal. Federal authorities tapped the Powells' telephone pursuant to a court order, and many conversations were recorded, including at least four which indicated that respondent was playing a minor role in the drug distributorship. Three of these conversations indicated that respondent was helping her husband and son to distribute drugs and to collect money owed for drugs sold. The fourth involved a conversation with a travel agent in which respondent booked an airline ticket for her husband in an assumed name. In April 1982, Ron Powell learned of the wiretap and notified his son, who called respondent and told her to leave home and drive to Los Angeles. Respondent was followed by FBI agents, who after some difficulty[1] managed to stop respondent and arrest her. A search of the car uncovered, *inter alia*, 2 kilograms of cocaine, 2,700 methaqualone tablets, a pistol, a machine gun, 2 silencers, and $30,000 cash.

Respondent was indicted by a grand jury in the Southern District of California for 15 counts of violations of federal law. Ten of these counts alleged transgressions of the federal narcotics laws; a jury convicted respondent of only three of these, and acquitted her of the others.[2] Count 1 of the indictment charged respondent with conspiring with her

---

[1] Respondent twice eluded the agents before eventually being stopped. She succeeded the second time by running her car into an agent and an FBI vehicle.

[2] Of the remaining five counts, four charged illegal possession of firearms. Respondent was acquitted of all these. The last count charged her with making false statements in her petition for court-appointed counsel. Respondent was convicted on this count, and her conviction was affirmed on appeal. 708 F. 2d 455, 457 (CA9 1983). The count is not in issue here.

husband and 17-year-old son, and others, "to knowingly and intentionally possess with intent to distribute cocaine." Four of the "overt acts" listed in support of this conspiracy were the above-mentioned telephone conversations. Count 9 charged respondent with possession of a specific quantity of cocaine with intent to distribute it. The jury acquitted respondent of Counts 1 and 9. Counts 3, 4, 5, and 6 charged respondent with the compound offenses of using the telephone in "committing and in causing and facilitating" certain felonies—"conspiracy to possess with intent to distribute and possession with intent to distribute cocaine"—in violation of 84 Stat. 1263, 21 U. S. C. § 843(b).[3] The jury convicted her of Counts 3, 4, and 5, and acquitted her of Count 6.

On appeal respondent argued that the verdicts were inconsistent, and that she therefore was entitled to reversal of the telephone facilitation convictions. She contended that proof that she had conspired to possess cocaine with intent to distribute, or had so possessed cocaine, was an element of each of the telephone facilitation counts;[4] since she had been acquitted of these offenses in Counts 1 and 9, respondent argued that the telephone facilitation convictions were not consistent with those acquittals. The United States Court of Appeals for the Ninth Circuit agreed. 708 F. 2d 455 (1983). The court first rejected the Government's contention that the verdicts could be viewed as consistent because the jury might have found respondent guilty of facilitating a conspiracy

_____

[3] Title 21 U. S. C. § 843(b) provides in part:

"(b) It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communication facility shall be a separate offense under this subsection."

[4] The lower courts seem to agree that the Government must prove, as an element of a § 843(b) offense, the commission of the felony that the accused is charged with facilitating. See *United States* v. *Ward*, 696 F. 2d 1315, 1319 (CA11), cert. denied, 461 U. S. 934 (1983); *United States* v. *Watson*, 594 F. 2d 1330, 1342–1344 (CA10 1979).

other than the conspiracy outlined in Count 1; the court concluded that it was "not convinced that there is evidence to support the government's claim . . . ."[5]  *Id.*, at 456.  The court then cited *United States* v. *Bailey*, 607 F. 2d 237, 245 (CA9 1979), cert. denied, 445 U. S. 934 (1980), and *United States* v. *Hannah*, 584 F. 2d 27, 28–30 (CA3 1978), for the proposition that a conviction under 21 U. S. C. § 843(b) must be reversed "when the conviction on the underlying conspiracy count is reversed."  708 F. 2d, at 456.

The Government petitioned for rehearing, arguing that the court had ignored the rule of *Dunn* v. *United States, supra*, that inconsistent verdicts in criminal trials need not be set aside, but may instead be viewed as a demonstration of the jury's leniency.  The court issued another opinion, stating that the Ninth Circuit "follows the *Dunn* rule," but spelling out in more detail the court's view that situations where a defendant has been convicted under § 843(b) but acquitted of the felony he is charged with facilitating consititute exceptions to the rule, and that in those situations the § 843(b) conviction must be reversed.  719 F. 2d 1480 (1983).

The Court of Appeals explained that an acquittal on the predicate felony necessarily indicated that there was insufficient evidence to support the telephone facilitation conviction, and mandated acquittal on that count as well.  The court went on to reject more explicitly the Government's argument that the jury might have found a different predicate felony than the conspiracy charged in Count 1; it noted that the case simply had not been presented to the jury under such a theory.[6]  We granted certiorari to address whether

---

[5] For purposes of our review the Government has conceded that the verdicts are inconsistent.

[6] After so stating, the court concluded: "We adhere to our statement in our opinion that there is insufficient evidence to support the convictions on Counts 3, 4, and 5 . . . ."  719 F. 2d, at 1481.  Respondent seizes upon this language, and similar language in the original opinion, to argue that the Ninth Circuit actually determined upon independent review of the

the Court of Appeals in this case, and other of the Courts of Appeals, see *Hannah, supra; United States* v. *Brooks*, 703 F. 2d 1273, 1278–1279 (CA11 1983), have acted consistently with *Dunn* in recognizing exceptions to the rule of that case.

The defendant in *Dunn* was tried pursuant to a three-count indictment charging violations of the federal liquor laws. The first count alleged that the defendant had maintained a common nuisance by keeping intoxicating liquor for sale at a specified place; the second and third counts charged unlawful possession, and unlawful sale, of such liquor. The jury convicted defendant of the first count and acquitted him of the second and third. On review, this Court rejected the claim that the defendant was entitled to discharge because the verdicts were inconsistent. Speaking through Justice Holmes, the Court stated:

> "Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. *Latham* v. *The Queen*, 5 Best & Smith 635, 642, 643. *Selvester* v. *United States*, 170 U. S. 262. If separate indictments had been presented against the defendant for possession and for maintenance of a nuisance, and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not

---

record that the evidence was insufficient as a matter of law, under *Jackson* v. *Virginia*, 443 U. S. 307 (1979). A review of the statements in context proves that respondent's argument is unsupportable. The court was merely expressing its opinion that the jury's acquittals on the predicate offenses required a finding of insufficient evidence on the compound offenses. We do not believe that its somewhat cryptic reliance on *United States* v. *Bailey*, 607 F. 2d 237, 245 (CA9 1979), indicates the contrary. Neither *Jackson* nor the sufficiency-of-the-evidence test were even cited.

Respondent alternatively urges us to conduct our own independent review of the record. It is not clear whether respondent preserved a sufficiency-of-the-evidence claim below, but in any event the Court of Appeals did not pass upon the claim, and we decline to address it in the first instance. For similar reasons we decline to address the other claims that respondent has urged in support of affirmance.

be pleaded as *res judicata* of the other. Where the offenses are separately charged in the counts of a single indictment the same rule must hold. As was said in *Steckler* v. *United States*, 7 F. (2d) 59, 60:

" 'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' " *Dunn*, 284 U. S., at 393.

Fifty-three years later most of what Justice Holmes so succinctly stated retains its force. Indeed, although not expressly reaffirming *Dunn* this Court has on numerous occasions alluded to its rule as an established principle. Thus, in *United States* v. *Dotterweich*, 320 U. S. 277, 279 (1943), the rule was invoked to support a jury verdict finding the president of a corporation guilty of introducing adulterated or misbranded drugs into interstate commerce, but acquitting the corporation of the same charge. And more recently, in *Harris* v. *Rivera*, 454 U. S. 339 (1981), this Court again reaffirmed the *Dunn* rule in the course of holding that a defendant could not obtain relief by writ of habeas corpus on the basis of inconsistent verdicts rendered after a state bench trial. This Court noted that *Dunn* and *Dotterweich* establish "the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons." *Harris* v. *Rivera*, *supra*, at 346. See also *Standefer* v. *United States*, 447 U. S. 10, 22–23 (1980).

These decisions indicate that this is not a case where a once-established principle has gradually been eroded by subsequent opinions of this Court. Nevertheless, recent decisions in the Courts of Appeals have begun to carve exceptions out of the *Dunn* rule. See *Brooks*, *supra;* *United States* v. *Hannah*, 584 F. 2d 27 (CA3 1978). See also

*United States* v. *Morales,* 677 F. 2d 1 (CA1 1982) (over-turning a conspiracy conviction where the defendant was acquitted of all the "overt acts" charged in support of the conspiracy). In addition to evidencing a general displeasure with allowing inconsistent verdicts to stand under some circumstances, these courts have distinguished *Dunn* on the ground that, where the predicate felony count and the telephone facilitation count are each submitted to the jury, the counts are "interdependent" and each count cannot be regarded as "as if it [were] a separate indictment." See *Hannah, supra,* at 30.

In so stating, these courts may be attempting to distin-guish *Dunn* on its facts, or they may mean to take issue with *Dunn*'s statement that "[i]f separate indictments had been presented against the defendant . . . and had been separately tried . . . an acquittal on one could not be pleaded as *res judicata* of the other." The latter statement, if not incorrect at the time, see *United States* v. *Oppenheimer,* 242 U. S. 85, 87 (1916), can no longer be accepted in light of cases such as *Sealfon* v. *United States,* 332 U. S. 575 (1948), and *Ashe* v. *Swenson,* 397 U. S. 436 (1970), which hold that the doctrine of collateral estoppel would apply under those circumstances. Respondent argues that this defect in *Dunn*'s rationale pre-cludes the rule's application in this case; indeed, respondent urges that principles of res judicata or collateral estoppel should apply to verdicts rendered by a single jury, to pre-clude acceptance of a guilty verdict on a telephone facilitation count where the jury acquits the defendant of the predicate felony.

We believe that the *Dunn* rule rests on a sound rationale that is independent of its theories of res judicata, and that it therefore survives an attack based upon its presently errone-ous reliance on such theories. As the *Dunn* Court noted, where truly inconsistent verdicts have been reached, "[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were

not convinced of the defendant's guilt." *Dunn, supra,* at 393. The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors. First, as the above quote suggests, inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause. See *Green* v. *United States,* 355 U. S. 184, 188 (1957); *Kepner* v. *United States,* 195 U. S. 100, 130, 133 (1904).

Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course. *Harris* v. *Rivera, supra,* indicates that nothing in the Constitution would require such a protection, and we therefore address the problem only under our supervisory powers over the federal criminal process. For us, the possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest. This possibility is a premise of *Dunn*'s alternative rationale—that such inconsistencies often are a product of jury lenity. Thus, *Dunn* has been explained by both courts and commentators as a recognition of the jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercises of power by the Executive Branch. See, *e. g., United States* v. *May-*

*bury*, 274 F. 2d 899, 902 (CA2 1960) (Friendly, J.); Bickel, Judge and Jury—Inconsistent Verdicts in the Federal Courts, 63 Harv. L. Rev. 649, 652 (1950). Cf. *Duncan* v. *Louisiana*, 391 U. S. 145, 155–156 (1968).

The burden of the exercise of lenity falls only on the Government, and it has been suggested that such an alternative should be available for the difficult cases where the jury wishes to avoid an all-or-nothing verdict. See Bickel, *supra*, at 652. Such an act is, as the *Dunn* Court recognized, an "assumption of a power which [the jury has] no right to exercise," but the illegality alone does not mean that such a collective judgment should be subject to review. The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable.[7]

We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake. Jurors, of course, take an oath to follow the law as charged, and they are expected to follow it. See *Adams* v. *Texas*, 448 U. S. 38 (1980). To this end trials generally begin with *voir dire*, by judge or counsel, seeking to identify those jurors who for whatever reason may

---

[7] In *Standefer* v. *United States*, 447 U. S. 10 (1980), this Court invoked concerns similar to those expressed above in refusing to apply the doctrine of nonmutual collateral estoppel to preclude prosecution of an aider and abettor where a jury had already acquitted the principal. Citing *Dunn*, we emphasized that through lenity, compromise, or mistake the jury might have reached an irrational result in the prior trial, which result was not subject to review at the Government's instigation. Under those circumstances we refused the protection of nonmutual collateral estoppel where the protection had as its basis the assumption that a criminal jury had acted in a rational manner. 447 U. S., at 22–23.

be unwilling or unable to follow the law and render an impartial verdict on the facts and the evidence. But with few exceptions, see *McDonough Power Equipment, Inc.* v. *Greenwood*, 464 U. S. 548, 556 (1984); *Smith* v. *Phillips*, 455 U. S. 209, 217 (1982), once the jury has heard the evidence and the case has been submitted, the litigants must accept the jury's collective judgment. Courts have always resisted inquiring into a jury's thought processes, see *McDonald* v. *Pless*, 238 U. S. 264 (1915); Fed. Rule Evid. 606(b) (stating that jurors are generally incompetent to testify concerning jury deliberations); through this deference the jury brings to the criminal process, in addition to the collective judgment of the community, an element of needed finality.

Finally, we note that a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. This review should not be confused with the problems caused by inconsistent verdicts. Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt. See *Glasser* v. *United States*, 315 U. S. 60, 80 (1942); Fed. Rule Crim. Proc. 29(a); cf. *Jackson* v. *Virginia*, 443 U. S. 307, 316, 319 (1979). This review should be independent of the jury's determination that evidence on another count was insufficient. The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilt beyond a reasonable doubt. We do not believe that further safeguards against jury irrationality are necessary.

Respondent contends, nevertheless, that an exception to the *Dunn* rule should be made where the jury acquits a defendant of a predicate felony, but convicts on the compound felony. Such an "exception" falls almost of its own weight. First, the acceptability of this exception is belied by the facts of *Dunn* itself. In *Dunn*, the defendant was acquitted of

unlawful possession, and unlawful sale, of liquor, but was convicted of maintaining a nuisance by keeping unlawful liquor for sale at a specified place. The same evidence was adduced for all three counts, and Justice Butler's dissent persuasively points out that the jury could not have convicted on the nuisance count without finding that the defendant possessed, or sold, intoxicating liquor. *Dunn,* 284 U. S., at 398. Respondent's exception therefore threatens to swallow the rule.

Second, respondent's argument that an acquittal on a predicate offense necessitates a finding of insufficient evidence on a compound felony count simply misunderstands the nature of the inconsistent verdict problem. Whether presented as an insufficient evidence argument, or as an argument that the acquittal on the predicate offense should collaterally estop the Government on the compound offense, the argument necessarily assumes that the acquittal on the predicate offense was proper—the one the jury "really meant." This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent. The Government could just as easily—and erroneously—argue that since the jury convicted on the compound offense the evidence on the predicate offense must have been sufficient. The problem is that the same jury reached inconsistent results; once that is established principles of collateral estoppel—which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict—are no longer useful.

This problem is not altered when the trial judge instructs the jury that it must find the defendant guilty of the predicate offense to convict on the compound offense. Although such an instruction might indicate that the counts are no longer independent, if inconsistent verdicts are nevertheless reached those verdicts still are likely to be the result of mistake, or lenity, and therefore are subject to the *Dunn* rationale. Given this impasse, the factors detailed above— the Government's inability to invoke review, the general

reluctance to inquire into the workings of the jury, and the possible exercise of lenity—suggest that the best course to take is simply to insulate jury verdicts from review on this ground.[8]

Turning to the case at hand, respondent argues that the jury could not properly have acquitted her of conspiracy to possess cocaine and possession of cocaine, and still found her guilty of using the telephone to facilitate those offenses. The Government does not dispute the inconsistency here. For the reasons previously stated, however, there is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled. Respondent is given the benefit of her acquittal on the counts on which she was acquitted, and it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted. The rule established in *Dunn* v. *United States* has stood without exception in this Court for 53 years. If it is to remain that way, and we think it should, the judgment of the Court of Appeals must be

*Reversed.*

---

[8] Nothing in this opinion is intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other. Cf. *United States* v. *Daigle*, 149 F. Supp. 409 (DC), aff'd *per curiam*, 101 U. S. App. D. C. 286, 248 F. 2d 608 (1957), cert. denied, 355 U. S. 913 (1958).