MOSK, J.
I concur in the result.
This is an easy case that makes good law. If we are careful.
The first of two general scenarios for inconsistent verdicts is this: A single jury returns inconsistent verdicts either against a single defendant on multiple crimes (e.g., the jury finds the defendant not guilty of selling narcotics, but also finds him guilty of using a telephone to sell narcotics) or against multiple defendants for a single crime (e.g., the jury finds the first of two defendants not guilty of conspiring with the second, but also finds the second guilty of conspiring with the first).
Such inconsistency of verdicts necessarily entails error, albeit apparently not of federal constitutional dimension, on the part of the jury in question, according to decisions including United States v. Powell (1984) 469 U.S. 57 [105 S.Ct. 471, 83 L.Ed.2d 461], and Dunn v. United States (1932) 284 U.S. 390 [52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161], It is “ ‘error,’ in the sense that the jury has not followed the court’s instructions” and its own oath. (United States v. Powell, supra, 469 U.S. at p. 65 [105 S.Ct. at pp. 477]; see Dunn v. United States, supra, 284 U.S. at p. 393 [52 S.C. at p. 190].)
The source of such error by a jury may evidently be found in mistake, compromise, or nullification. (See United States v. Powell, supra, 469 U.S. at p. 65 [105 S.Ct. at pp. 476-477]; see generally Muller, The Hobgoblin of Little Minds? Our Foolish Law of Inconsistent Verdicts (1998) 111 Harv. L.Rev. 771, 782-786, 803-806 (hereafter Muller).) Mistake by a jury may be somewhat troubling, but hardly greatly, since it is not a willful violation by *868 the panel of the court’s instructions or its own oath. (Muller, supra, 111 Harv. L.Rev. at p. 782.) More troubling is compromise on the part of a jury, which is indeed a willful violation by the panel of both instructions and oath, involving, by definition, the jury’s return of a guilty or not guilty verdict in spite of the honestly held view of one or more jurors to the contrary. (Id. at pp. 782-784.) At least as troubling is jury nullification, a “ ‘power’ ” that the panel, according to Powell and Dunn, has “ ‘no right to exercise’ ” (Dunn v. United States, supra, 284 U.S. at p. 393 [52 S.Ct. at p. 190]; accord, United States v. Powell, supra, 469 U.S. at p. 66 [105 S.Ct. at p. 477]), which similarly amounts to a willful violation by the panel of both instructions and oath. (Muller, supra, 111 Harv. L.Rev. at pp. 784-786, 803-806.) As Powell and Dunn emphasize, nullification may run in favor of the defendant, in the form that is called lenity. (United States v. Powell, supra, 469 U.S. at p. 65 [105 S.Ct. at p. 477]; accord, Dunn v. United States, supra, 284 U.S. at p. 393 [52 S.Ct. at p. 190].) But, as they fail to acknowledge, nullification may also run .against the defendant, in the form that may be called hostility. (Muller, supra, 111 Harv. L.Rev. at pp. 803-806.) In either direction, it amounts to “illegality.” (United States v. Powell, supra, 469 U.S. at p. 66 [105 S.Ct. at p. 477].)
The second of two general scenarios for inconsistent verdicts is this: Multiple juries return inconsistent verdicts against multiple defendants for a single crime (e.g., one jury finds the first of two defendants not guilty of conspiring with the second, but another jury finds the second guilty of conspiring with the first). Such inconsistency does not necessarily entail error on the part of any of the juries in question. The source need be found in nothing more than the possibility that each drew differing inferences from differing evidence. But, inasmuch as mistake, compromise, and nullification cannot be ruled out entirely, neither can error.
As for the first general scenario for inconsistent verdicts, I agree that we should abandon the so-called rule of consistency, which requires virtually automatic reversal of an inconsistent conviction. It is true that, under this scenario, we know that error, arising from mistake, compromise, or nullification, tainted either the inconsistent acquittal or the inconsistent conviction. But we simply do not know whether error tainted the inconsistent conviction rather than the inconsistent acquittal. Lacking such knowledge, we should not reverse the inconsistent conviction automatically. Instead, we should attempt to determine whether error tainted the inconsistent conviction in fact. To find the answer, we must do something more—notwithstanding Powell and Dunn—than merely ask the question whether the evidence was sufficient for the inconsistent conviction. (See generally Muller, supra, 111 Harv. L.Rev. at pp. 812-820.) For what we learn from such an inquiry is only *869 whether any rational jury, viewing the evidence in the light most favorable ■ to the government, could have returned the verdict resulting in the inconsistent conviction. What we need to learn, by contrast, is whether the defendant’s actual jury did in fact return the verdict in question out of mistake, compromise, or nullification. Of course, we cannot subjectively look into the mind of any individual juror. But we may objectively consider the circumstances under which all of the jurors acted. Hence, the question that we should ask is whether the record on appeal presents such a picture of what transpired both inside of the courtroom, including the trial, and also outside of the courtroom, including the events that were the trial’s subject, as to cause us to conclude that mistake, compromise, or nullification had a marginal effect on the verdict resulting in the inconsistent conviction.
As for the second general scenario for inconsistent verdicts, I agree that we should abandon the rule of consistency with its requirement of virtually automatic reversal of an inconsistent conviction. A fortiori. For, under this scenario, we do not know whether error, arising from mistake, compromise, or nullification, tainted either the inconsistent acquittal or the inconsistent conviction or neither. But we also do not know that it did not. As stated, since we cannot rule out the source of error entirely, neither can we rule out error itself. Here, as above, we should ask whether the record on appeal presents such a picture of what transpired within and without the courtroom as to cause us to conclude that mistake, compromise, or nullification had a marginal effect on the verdict resulting in the inconsistent conviction.
The case at bar implicates the second general scenario for inconsistent verdicts. At the time of the crimes, Price was 29 years of age and Palmer was only 15. Palmer’s jury returned a verdict finding him guilty of attempting to murder Humphries, and made a finding determining that the attempted murder was not willful, deliberate, and premeditated; it also returned a verdict finding him not guilty of conspiring to murder Showalter altogether with Price. Subsequently, Price’s jury returned a verdict finding him guilty of attempting to murder Humphries, and made a finding, arguably inconsistent with Palmer’s, determining that the attempted murder was indeed willful, deliberate, and premeditated; it also returned a verdict,, surely inconsistent with Palmer’s, finding him guilty of conspiring to murder Showalter altogether with Palmer. On Price’s challenge, we should ask whether the record on appeal presents such a picture of what transpired within and without the courtroom as to cause us to conclude that mistake, compromise, or nullification had a marginal effect on the verdict resulting in the surely inconsistent conviction of conspiracy to murder Showalter or on the finding resulting in the arguably inconsistent determination that the attempted murder of Humphries was willful, deliberate, and premeditated. We would have *870 to answer in the negative. The presence of overwhelming evidence that Price conspired to murder Showalter and that the attempted murder of Humphries was willful, deliberate, and premeditated would likely bar a conclusion that mistake, compromise, or nullification had a marginal effect on the verdict and finding adverse to Price. (See Muller, supra, 111 Harv. L.Rev. at p. 824.) Evidence there was. But it does not seem overwhelming. With that said, however, there is nothing in the record of appeal that would support a conclusion that mistake, compromise, or nullification had a marginal effect on the verdict and finding against Price. We could no doubt speculate about the matter. Speculation, however, is not enough. Were we to indulge nevertheless, we might conjecture not mistake or compromise, but only nullification—and then only in the form of lenity toward the much younger Palmer on the part of his jury as opposed to hostility toward the much older Price on the part of his.