**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 05-4114**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LAKISHA NICOLE BARNES,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.  Louise W. Flanagan, Chief
District Judge.  (CR-04-105)

_____

Submitted:  May 2, 2007                Decided:  May 23, 2007

_____

Before WILKINS, Chief Judge, and WILKINSON and NIEMEYER, Circuit
Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

Carlton M. Mansfield, Lumberton, North Carolina, for Appellant.
George E. B. Holding, United States Attorney, Anne M. Hayes,
Jennifer P. May-Parker, Assistant United States Attorneys, OFFICE
OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Lakisha Barnes was convicted by a jury of one count of conspiring to distribute more than 50 grams, but less than 150 grams, of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and three counts of distributing and aiding and abetting the distribution of crack cocaine in amounts of 35 grams, 50 grams, and 50 grams, respectively, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Barnes was sentenced in December 2004 to concurrent 188-month terms of imprisonment on each of the four counts under the mandatory Sentencing Guidelines, which existed prior to the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005).

On appeal, Barnes contends that the evidence produced at trial was constitutionally insufficient to support her convictions and that she was sentenced in violation of her constitutional jury trial right as articulated in Booker. For the reasons that follow, we affirm.

I

Barnes contends first that the evidence presented at trial was constitutionally insufficient to support her convictions. She argues that the evidence did not show that she was involved in a conspiracy to distribute drugs, nor that she aided and abetted the distribution of drugs.

In reviewing the sufficiency of the evidence, "the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, _any_ rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also United States v. Powell, 469 U.S. 57, 67 (1984) ("[The question is whether] the jury could rationally have reached a verdict of guilty beyond a reasonable doubt").

In this case, the government presented direct, substantial evidence of Barnes' participation in the alleged conspiracy, as well as her participation in the three alleged overt acts committed in furtherance of the conspiracy, that amply satisfies the constitutional standard.

Barnes had a history of distributing crack cocaine when she began a relationship in April 2003 with a fellow drug dealer named Vance Hinnant. The two of them combined their drug dealing efforts by selling drugs out of Barnes' house and by supplying drugs to each other. These activities were brought to light through three undercover purchases of crack cocaine by police officer Kevin Dickerson from a drug dealer known as Jamus Debro.

Dickerson set up the first purchase on August 13, 2003, when he informed Debro that he wished to purchase two ounces of crack cocaine for $2,200. Debro, who did not have the drugs, called Barnes to find out where he could obtain the crack cocaine, and

Barnes in turn called Hinnant to find out if he had the amount requested. When Barnes found out that Hinnant had a sufficient amount, she called Debro back and told him to pick her up and she would take him to the drugs. Thereafter, Debro met Dickerson at a nearby Hardee's, obtained $2,200 in cash, and went to Barnes' house. Barnes and Debro climbed into Barnes' blue minivan, and Barnes drove to Hinnant's house, where Debro met Hinnant for the first time. While Barnes waited in the car, Debro went into Hinnant's house and purchased two ounces of crack cocaine for $2,000. Barnes then drove Debro back to the Hardee's where Dickerson was waiting. While Barnes waited in the car, Debro completed the drug sale with Dickerson, after which Barnes drove Debro back to pick up his car.

Dickerson set up a second purchase of two ounces of crack cocaine from Debro on August 19, 2003, and a similar sequence of events unfolded. Debro called Barnes; Barnes called Hinnant; Debro picked up $2,200 from Dickerson at the Hardee's; Debro drove to Barnes' house and dropped off his car; Barnes drove Debro to Hinnant's house in her minivan; Debro purchased two ounces of crack cocaine from Hinnant for $2,000 while Barnes waited in the car; Barnes drove Debro back to the Hardee's. On this occasion, Dickerson climbed into Barnes' minivan and completed the purchase of the cocaine from Debro in the backseat while Barnes watched from the driver's seat.

Dickerson set up the final undercover purchase of two ounces of crack cocaine from Debro on September 3, 2003, and, again, a similar sequence of events unfolded. Debro called Barnes and informed her that Dickerson wanted two more ounces; Barnes called Hinnant and arranged the transaction between Debro and Hinnant; Dickerson called Debro, who was at Barnes' house, from the familiar Hardee's, and Barnes drove Debro to pick up the $2,200 from Dickerson; Barnes drove Debro to Hinnant's to buy the crack cocaine. This time, while at Hinnant's house, Barnes told Hinnant, "It's time for the look out for the cook out." Hinnant understood Barnes to be asking for payment for setting up the three drug deals. Hinnant refused to pay Barnes for her role in the drug transactions. After Debro purchased the crack cocaine from Hinnant, Barnes drove him back to the Hardee's to complete the sale to Dickerson. Debro told Dickerson that in the future Dickerson would need to deal directly with Barnes to buy drugs because he was preparing for his imminent deployment to Iraq for military service.

Debro was arrested on his way home, and Barnes was arrested a short time later. The total amount of crack cocaine purchased by Dickerson from Debro during the three undercover purchases in which Barnes was involved was 152.8 grams.

We have no hesitancy in concluding that this evidence was sufficient to support Barnes' convictions in this case, both as a

conspirator and as an aider and abettor in distributing between 50 and 150 grams of crack cocaine.

                                II

Barnes also contends that the district court committed a Sixth Amendment error by imposing a sentence based on a drug quantity greater than the maximum authorized by the drug quantity found by the jury.  See Booker, 543 U.S. at 244 (holding that the Sixth Amendment right to a jury trial is violated when the district court, acting pursuant to mandatory sentencing guidelines, imposes a sentence greater than the maximum authorized by the facts found by the jury alone).  In this case, the district court found Barnes responsible for "the possession and/or distribution of 238 grams of cocaine base."  This gave her an offense level under the mandatory Guidelines of 34, and with a criminal history category of III, the Guidelines range was a sentence of 188 to 235 months' imprisonment. The district court sentenced Barnes to a 188 months' imprisonment on each of the four counts, to be served concurrently.

Despite the district court's factual findings during sentencing, we see no Sixth Amendment error in this case.  The jury found Barnes responsible for distributing more than 50 grams, but less than 150 grams, of crack cocaine.  These drug quantity findings placed Barnes at an offense level of 32.  See U.S.S.G. § 2D1.1(c)(4).  With a criminal history category of III, the jury's factual findings authorized a Sentencing Guidelines range of 151 to

188 months' imprisonment. The court sentenced Barnes to 188 months, a sentence plainly authorized by the jury's findings. While it is true that the district court found Barnes responsible for distributing 238 grams of crack cocaine and calculated the Guidelines range accordingly, it imposed a 188-month sentence of imprisonment which, as it turned out, was authorized by the jury's findings of fact.

Although there is no Sixth Amendment error in this case, Barnes was sentenced under a mandatory Sentencing Guidelines regime, which is "a separate class of error . . . distinct from the Sixth Amendment claim that gave rise to the decision in Booker, and it is non-constitutional in nature." United States v. Hughes, 401 F.3d 540, 553 (4th Cir. 2005). Because Barnes failed to object to the mandatory Sentencing Guidelines before the district court, our review is for plain error. See United States v. White, 405 F.3d 208, 215 (4th Cir. 2005).

Under plain error review, we must determine whether Barnes can demonstrate actual prejudice by showing "that the error of sentencing [her] under a mandatory guidelines regime 'affected the district court proceedings.'" Id. at 223 (quoting United States v. Olano, 507 U.S. 725, 734 (1993)). That is, defendants such as Barnes "who argue for the first time on appeal that they were erroneously sentenced under the pre-Booker mandatory guidelines regime [must] demonstrate, based on the record, that the treatment

-7-

of the guidelines as mandatory caused the district court to impose a longer sentence than it otherwise would have imposed." Id. at 224.

Barnes cannot make this showing. There is nothing in the record that provides a nonspeculative basis for concluding that the district court would have selected a different sentence under an advisory sentencing regime. See White, 405 F.3d at 223-24.

Barnes also argues that the district court, when calculating her Sentencing Guidelines range, erred by not adjusting her offense level down for being a minor or minimal participant in the criminal activity for which she was convicted. See U.S.S.G. § 3B1.2. At sentencing, the district court ruled that based on the evidence presented at trial, a "score reduction" for being a "minimal participant" in the conspiracy "would not be appropriate." We refuse to disturb the district court's ruling on this point.

Accordingly, Barnes' convictions and sentences are

AFFIRMED.