An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-299

Filed: 15 September 2015

Guilford County, Nos. 12 CRS 99006, 13 CRS 24145

STATE OF NORTH CAROLINA

v.

JATUE BALDWIN

Appeal by defendant from judgment entered 30 October 2014 by Judge John O. Craig, III in Guilford County Superior Court. Heard in the Court of Appeals 10 August 2015.

> *Roy Cooper, Attorney General, by Karen A. Blum, Assistant Attorney General, for the State.*

> *Parish & Cooke, by James R. Parish, for defendant-appellant.*

DAVIS, Judge.

Jatue Baldwin ("Defendant") appeals from his convictions for conspiracy to commit robbery with a dangerous weapon and attaining the status of an habitual felon. On appeal, he contends that the trial court erred in denying his motion to set aside his conspiracy conviction based upon the theory of inconsistent verdicts. After careful review, we conclude that Defendant received a fair trial free from error.

**Factual Background**

The State presented evidence at trial tending to establish the following facts: On the night of 24 December 2012, Defendant and an unidentified individual entered a house located at 206 Heritage Ridge Way in Greensboro, North Carolina where Daniel Taylor ("Taylor") was living with his brother, Joseph Taylor ("Joseph"), and Joseph's wife, Stefanie Tate ("Tate"). Taylor was present inside the home at the time the two men entered the residence, but Joseph and Tate were out visiting Tate's parents.

Defendant and the unknown individual pointed handguns at Taylor and proceeded to take items from the house, including firearms, computers, an iPad, a camera, an Xbox, and jewelry. During the robbery, Taylor heard Defendant and the unidentified individual speak to a third person standing outside the back door of the home. Taylor recognized the voice of the man standing outside of the residence as belonging to James Goolsby ("Goolsby").

While Defendant, Goolsby, and the unidentified individual were still inside, Joseph and Tate returned home and noticed a car parked next to a nearby playground. They recognized the car as belonging to Defendant with whom they were acquainted.

Upon entering the house, Joseph and Tate saw Defendant, the unidentified individual, and Goolsby running out of the back door. The three intruders then fled

the scene in Defendant's car. Joseph and Tate pursued Defendant's car in their own vehicle and obtained Defendant's license plate number. They ultimately abandoned their pursuit after Goolsby fired several shots at their vehicle with a firearm.

On 18 February 2013, Defendant was indicted on charges of robbery with a dangerous weapon, first-degree burglary, conspiracy to commit robbery with a dangerous weapon, possession of a firearm by a felon, and attaining the status of an habitual felon.[1] A jury trial was held in Guilford County Superior Court on 6 October 2014 before the Honorable John O. Craig, III.

During his case-in-chief, Defendant presented the testimony of several witnesses who provided alibi evidence to the effect that Defendant could not have participated in the robbery because he was at a party when the robbery occurred and had not given anyone permission to use his car that evening. The jury found Defendant guilty of conspiracy to commit robbery with a dangerous weapon but not guilty of robbery with a dangerous weapon, first-degree burglary, or possession of a firearm by a felon. After the announcement of the jury's verdict, Defendant moved for judgment notwithstanding the verdict, arguing that the jury's verdicts were inconsistent and there was insufficient evidence to support the conspiracy to commit robbery with a dangerous weapon conviction. The trial court denied the motion, and

---

[1] The record contains indictments for the conspiracy to commit robbery with a dangerous weapon and habitual felon charges but does not contain any indictments for the remaining charged offenses. It is clear from the remainder of the record and the trial transcript, however, that Defendant was also charged with these offenses.

Defendant subsequently entered a guilty plea to attaining the status of an habitual felon. The trial court sentenced Defendant to 58 to 82 months imprisonment. Defendant gave oral notice of appeal in open court.

**Analysis**

On appeal, Defendant's sole argument is that the trial court erred in refusing to set aside the jury's guilty verdict as to the charge of conspiracy to commit robbery with a dangerous weapon. Specifically, Defendant contends that the jury verdicts were inconsistent because (1) the jury acquitted him of the charges of robbery with a dangerous weapon, first-degree burglary, and possession of a firearm by a felon; and (2) the only evidence that he engaged in a conspiracy to commit robbery with a dangerous weapon was the evidence presented in connection with his alleged participation in the robbery of Taylor's residence.

"When this Court has addressed the issue of inconsistent verdicts, it rarely has set forth its standard of review. However, the majority of those cases appears to have employed a *de novo* review." *State v. Blackmon*, 208 N.C. App. 397, 403, 702 S.E.2d 833, 837 (2010). We therefore review Defendant's argument *de novo*.

In *United States v. Powell*, 469 U.S. 57, 83 L.Ed.2d 461 (1984), the Supreme Court of the United States explained why a defendant may not obtain relief based upon inconsistent jury verdicts:

> The rule that the defendant may not upset [an inconsistent] verdict embodies a prudent acknowledgment

of a number of factors. First . . . inconsistent verdicts — even verdicts that acquit on a predicate offense while convicting on the compound offense — should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause.

Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.

*Id.* at 65, 83 L.Ed.2d at 468-69 (internal citations omitted).

Our Supreme Court adopted this reasoning in *State v. Reid*, 335 N.C. 647, 658-60, 440 S.E.2d 776, 782-83 (1994), and in *State v. Mumford*, 364 N.C. 394, 699 S.E.2d 911 (2010), the Court further explained that "because each count of an indictment is, in fact and theory, a separate indictment," inconsistencies between verdicts returned by a jury are "permissible, and not found to be legally contradictory, as long as there [is] sufficient evidence to support the guilty verdict." *Id.* at 400, 699 S.E.2d at 915 (internal citation and quotation marks omitted). The Court reiterated, however, that the "outcome is different when a jury returns a 'mutually exclusive' verdict. Verdicts

are mutually exclusive when a verdict purports to establish that the defendant is guilty of two separate and distinct criminal offenses, the nature of which is such that guilt of one necessarily excludes guilt of the other." *Id.* (citation, quotation marks, and brackets omitted).

Here, the jury only convicted Defendant of one offense and Defendant was therefore not subjected to mutually exclusive verdicts. The State presented sufficient evidence to permit the jury to convict Defendant of all of the charged offenses, including the conspiracy to commit robbery with a dangerous weapon charge. Indeed, Defendant does not contend that the State failed to present evidence sufficient to submit the conspiracy to commit robbery with a dangerous weapon charge to the jury. Instead, he simply argues that any evidence presented which overlaps with the other charges for which he was acquitted should have been disregarded by the jury in their consideration of the conspiracy offense. However, this position does not comport with the theory of inconsistent verdicts set forth above. Accordingly, we hold that the trial court did not err in refusing to set aside Defendant's conspiracy to commit robbery with a dangerous weapon conviction.

Defendant also makes a related argument that his conspiracy to commit robbery with a dangerous weapon conviction should be set aside on "equity grounds similar to those of collateral estoppel[.]" This argument seems to be based upon the doctrine of double jeopardy collateral estoppel. Under this doctrine,

an issue of ultimate fact, once determined by a valid and final judgment, cannot again be litigated between the same parties in any future lawsuit. Subsequent prosecution is barred only if the jury could not rationally have based its verdict on an issue other than the one the defendant seeks to foreclose.

*State v. Edwards*, 310 N.C. 142, 145, 310 S.E.2d 610, 613 (1984) (citation and emphasis omitted).

However, the defense of double jeopardy collateral estoppel does not apply here as there was no *prior* trial that established an ultimate issue of fact regarding Defendant's charges. *Id.*; *see also State v. Agee*, 93 N.C. App. 346, 353, 378 S.E.2d 533, 536 (1989) ("The first requirement defendant must show in order to claim double jeopardy collateral estoppel is that the issue he seeks to foreclose in his *second* trial has necessarily been determined in his favor as an ultimate fact issue[.]" (emphasis added)), *aff'd*, 326 N.C. 542, 391 S.E.2d 171 (1990). Therefore, Defendant's argument on this issue lacks merit.

## Conclusion

For the reasons stated above, we conclude that Defendant received a fair trial free from error.

NO ERROR.

Judges STROUD and INMAN concur.

Report per Rule 30(e).