## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 17 2016, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

J. Clayton Miller
Jordan Law, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael York, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | March 17, 2016 <br><br> Court of Appeals Case No. 89A01-1507-CR-911 <br><br> Appeal from the Wayne Superior Court <br><br> The Honorable Darrin M. Dolehanty, Judge <br><br> Trial Court Cause No. 89D03-1501-CM-62 |

**Mathias, Judge.**

[1] Michael York was convicted in Wayne Superior Court of Class C misdemeanor operating a motor vehicle with an alcohol concentration equivalent ("A.C.E.")

of 0.08 or greater. York appeals and presents three issues for our review, which we reorder and restate as:

I. Whether the trial court erred in denying York's motion to dismiss all charges based on alleged discovery violations by the State;

II. Whether the State presented evidence sufficient to support York's conviction; and

III. Whether the trial court's judgments are inconsistent.

We affirm.

## Facts and Procedural History

At approximately 1:25 a.m. on January 11, 2015, Indiana State Police Trooper Thomas Ratliff ("Trooper Ratliff") was on patrol driving westbound on Bridge Avenue in Richmond, Indiana. As he drove, he was passed by a white Ford pickup truck with a loud muffler. The loud noise caused Trooper Ratliff to look in his rear-view mirrors to observe the truck. When he did so, he noticed that the license plate light was not operative. Trooper Ratliff turned his car around and began to follow the white truck. He then noticed that the license plate on the truck was expired. As the truck approached the intersection with 8th Street, the driver made a turn without using his turn signal. Trooper Ratliff then activated the emergency lights in his patrol car and stopped the truck.

As he walked up to the driver's side of the truck, Trooper Ratliff observed four adults in the car, and York was the driver of the car. Trooper Ratliff smelled the odor of alcohol coming from the vehicle and asked York if he had been drinking. York replied that everyone in the car had been drinking that night and

admitted that he had had a "few" drinks. Tr. pp. 34, 85, 123. In fact, York later testified that he had drunk five mixed drinks at dinner and then a double shot of rum when he went to pick up his girlfriend's brother and sister-in-law. As York spoke, Trooper Ratliff could smell the odor of alcohol on York's breath.

[5] Trooper Ratliff decided to perform the horizontal gaze nystagmus test on York, which York failed. He then administered a portable breath test on York, which indicated that York's A.C.E. was 0.11. Trooper Ratliff placed York under arrest for driving while intoxicated and transported him to jail.

[6] At the jail, Trooper Ratliff administered a certified breath test to York. Before doing so, Trooper Ratliff examined York's mouth to ensure that no foreign objects were in it. York then blew into the breath test machine. The results of the test indicated that York's A.C.E. was 0.098.

[7] The State charged York on January 16, 2015 with Class C misdemeanor operating a motor vehicle while intoxicated and Class C misdemeanor operating a motor vehicle with an A.C.E. of greater than 0.08. York filed a motion to dismiss on June 5, 2015, arguing that the charges should be dismissed because the State had not provided him with requested discovery, specifically the video recordings of his booking and certified breath test.

[8] A bench trial was held on June 11, 2015. At the beginning of the trial, the court heard evidence and argument regarding the video recordings. The State presented evidence that the video recording of the booking had not been made due to an equipment failure, and the video recording of the breath test was

apparently made, but the video tape had broken and could not be repaired. The trial court denied the motion to dismiss, and the case proceeded to trial.

[9] At the conclusion of the State's case-in-chief, York moved for a "directed verdict"[1] on both counts. The trial court granted the motion with regard to the count of operating while intoxicated but denied it with regard to the count of operating with an A.C.E. of 0.08 or greater. York then presented testimony of an expert who claimed that, based on the evidence, his opinion was that York's A.C.E. was actually 0.053. York also testified, and his testimony was mostly in agreement with that of Trooper Ratliff except that York claimed to have been chewing gum before the breath test. At the conclusion of the trial, the court found York guilty of operating a motor vehicle with an A.C.E. of 0.08 or greater. York was subsequently sentenced to fourteen days in jail, which he had already served.[2] York now appeals.

## I. Motion to Dismiss

[10] York argues that the trial court should have dismissed the charges against him based upon the State's inability to produce the video recordings of the booking and breath testing that he requested during discovery. In reviewing this claim, we note our standard of review:

---

[1] *See* Ind. Trial Rule 50.

[2] The trial court did not suspend York's license, as it had already been suspended since the initial hearing on January 20, 2015.

A trial judge has the responsibility to direct the trial in a manner that facilitates the ascertainment of truth, ensures fairness, and obtains economy of time and effort commensurate with the rights of society and the criminal defendant. Where there has been a failure to comply with discovery procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated. . . . The trial court must be given wide discretionary latitude in discovery matters since it has the duty to promote the discovery of truth and to guide and control the proceedings, and will be granted deference in assessing what constitutes substantial compliance with discovery orders. Absent clear error and resulting prejudice, the trial court's determinations as to violations and sanctions should not be overturned.

*State v. Schmitt*, 915 N.E.2d 520, 522-23 (Ind. Ct. App. 2009) (quoting *Lindsey v. State*, 877 N.E.2d 190, 195 (Ind. Ct. App. 2007)), *trans. denied*.

[11] A continuance is usually the proper remedy if a remedial measure is warranted. *Id.* at 523. However, if the State's actions were deliberate and the conduct prevented a fair trial, a more extreme remedial measure, such as the exclusion of evidence, may be employed. *Id.* Dismissal of charges is also a sanction within the arsenal of the trial judge in dealing with the failure of the State to afford the defense access to evidentiary materials as ordered. *Id.* (citing *Robinson v. State*, 450 N.E.2d 51, 52 (Ind. 1983)). In determining whether dismissal was proper, the court should consider whether the breach was intentional or in bad faith and whether substantial prejudice resulted. *Id.* Furthermore, we consider claims of prosecutors failing to supply defendants with discovery seriously, and, if such is

established, we find such behavior unacceptable and troublesome. *Id.* (citing *Gardner v. State*, 724 N.E.2d 624, 628 (Ind. Ct. App. 2000)).

[12] Here, however, nothing in the record indicates that the State intentionally destroyed the video recordings or failed to preserve them in bad faith. The State presented evidence that the video recorder for the booking room had been inoperative the week that York was booked, and the video recording of the breath test was apparently made, but the video tape itself broke. At most, this establishes negligence on the part of the State, not the intentional, bad faith destruction of evidence that would support a dismissal of the charges.

[13] Moreover, the video tapes were most relevant to the charge that was dismissed by the court—operating while intoxicated. As York's counsel pointed out, the video recordings would have preserved York's behavior and demeanor while at the police station—which would be probative of whether he was impaired. York, however, also claims that the evidence was probative of the manner in which the breath test was performed, especially how long York blew into the testing machine, which his expert witness testified was important to the accuracy of the results. This appears to be true, but we cannot fault the trial court for not taking the extreme measure of dismissing the charges against York based upon what appears to be nothing more than technical malfunctions of the police video recording systems. In short, the trial court did not abuse its discretion by denying York's motion to dismiss the charges against him.

## II. Sufficiency of the Evidence

[14] York also contends that the State failed to prove that he operated a vehicle with an A.C.E. of 0.08 or greater. In addressing this argument, we repeat our well-settled standard of review: we neither reweigh the evidence or judge the credibility of the witnesses; instead, we consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Neukam v. State*, 934 N.E.2d 198, 202 (Ind. Ct. App. 2010) (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)).

[15] To convict York of operating a motor vehicle with an A.C.E. of at least 0.08, the State had to present evidence he "operate[d] a vehicle with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol . . . per . . . two hundred ten (210) liters of the person's breath." Ind. Code § 9-30-5-1. At a trial for such charge, evidence of the driver's A.C.E. at the time of driving, or within three hours thereof, is admissible. *See* Ind. Code §§ 9-30-6-2, 9-30-6-15(a); *see also Pattison v. State*, No. 27A05-1411-CR-517, ___ N.E.3d ___ 2015 WL 7873732, at *2 (Ind. Ct. App. Dec. 4, 2015), *trans. pending*.

[16] Furthermore, Indiana Code section 9-30-6-15(b) provides:

> If, in a prosecution for an offense under IC 9-30-5, evidence establishes that:

> (1)     a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and
>
> (2)     the person charged with the offense had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per:
>
>> (A)     one hundred (100) milliliters of the person's blood at the time the test sample was taken; or
>>
>> (B)     two hundred ten (210) liters of the person's breath;
>
> the trier of fact shall presume that the person charged with the offense had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per one hundred (100) milliliters of the person's blood or per two hundred ten (210) liters of the person's breath at the time the person operated the vehicle. *However, this presumption is rebuttable.*

(Emphasis added).

[17]     York does not deny that the State presented evidence that a chemical test was performed that indicated that his A.C.E. was greater that 0.08, and he acknowledges that the trial court, acting as the trier of fact, could therefore presume that his A.C.E. was at least 0.08 at the time he operated his vehicle. York claims, however, that he successfully rebutted this presumption.

[18]     In support of his argument, York claims that he established that the breath test procedure was flawed because he testified that he had chewing gum in his mouth, and the presence of a foreign object in the subject's mouth invalidates the results of the certified breath test. *See* 260 Ind. Admin. Code 2-4-2(a)(B) (providing that a person taking a certified breath test must not have put any foreign substance into his mouth or respiratory tract within fifteen minutes before the time the first breath sample is taken). However, Trooper Ratliff clearly testified that he checked York's mouth for foreign objects and saw nothing. York's testimony clearly conflicts with Trooper Ratliff's testimony, and it was up to the trial court, acting as the trier of fact, to choose which testimony to credit. We will not second-guess the trier of fact on appeal.

[19]     York also refers to the testimony of his expert witness, who testified that based upon York's drinking pattern, his A.C.E. at the time he was pulled over would actually have been 0.053. The expert witness testified that the longer a person blows into the breath testing machine, the greater the alcohol concentration reading will be. York notes that, with the video recording of the breath test "destroyed," there is no way to show how long York actually blew into the machine. However, Trooper Ratliff testified that the machine is automated and instructs the subject to blow until an adequate sample has been collected. Although York testified that he blew into the machine for a long time, the trial court was not required to credit his self-serving testimony. It is also true that the testimony of York's expert witness was not directly contradicted by any witness presented by the State. However, the trial court could still choose to credit the

results of the certified breath test approved by the State Department of Toxicology instead of the testimony of York's expert witness.

[20] In short, York's claims on appeal regarding the sufficiency of the evidence are simply a request that we consider the evidence in a light most favorable to him, reweigh the evidence, and come to a conclusion other than that reached by the trial court. This we will not do. *See Neukam*, 934 N.E.2d at 202 (citing *McHenry*, 820 N.E.2d at 126).

## III. Inconsistent Judgments

[21] Lastly, we address York's claim that the trial court rendered inconsistent "verdicts." Strictly speaking, of course, trial courts do not render verdicts; juries render verdicts. *See* Verdict, *Black's Law Dictionary* (10th ed. 2014) (defining a verdict as "[a] jury's finding or decision on the factual issues of a case.").

[22] York acknowledges that alleged inconsistencies in jury verdicts are not reviewable on appeal. As explained by our supreme court in *Beattie v. State*, 924 N.E.2d 643, 648 (Ind. 2010), inconsistencies in a jury's verdict could be due to several factors: misunderstanding the trial court's instructions, exercising lenity, or compromise among disagreeing jurors. However, these concerns are adequately addressed through the lens of appellate review for sufficient evidence. *Beattie*, 924 N.E.2d at 649 (citing *United States v. Powell*, 469 U.S. 57, 67-69 (1984)).

[23] York argues that the same deference should not be afforded to trial judges acting as the trier of fact. We need not address whether a trial court's judgment

can be reviewed for inconsistency on appeal, because we conclude that nothing is inherently inconsistent with the trial court's judgments in this case.

[24] York argues that the trial court specifically found no evidence of impairment when it granted his motion for judgment on the evidence with regard to the the charge of operating a motor vehicle while intoxicated. Even so, this does not mean that the trial court could not also find that York operated his truck with an A.C.E. of at least 0.08.

[25] "Intoxicated" is statutorily defined as "under the influence of . . . alcohol . . . so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind. Code § 9-13-2-86. How alcohol affects a person depends upon a variety of factors, including: weight, age, gender, and tolerance to alcohol. *See* 4 Am. Jur. Proof of Facts 3d 229 (1989 & Supp. 2015). Accordingly, one person could be "intoxicated" while having an A.C.E. under 0.08, and another person could feasibly have an A.C.E. of 0.08 and show few signs of intoxication. *See Bisard v. State*, 26 N.E.3d 1060, 1066 (Ind. Ct. App. 2015) (noting expert testimony that it is possible for a tolerant drinker to be intoxicated, but show no signs of intoxication), *trans. denied*. We therefore conclude that the trial court's judgments were not inconsistent, and York's argument to the contrary fails.

## Conclusion

[26] The trial court did not abuse its discretion when it denied York's motion to dismiss the charges due to discovery violations because the State presented

evidence that the failure to preserve the video recordings was the result of technical failures, not the deliberate destruction of evidence. The evidence is sufficient to support York's conviction for operating a vehicle with an A.C.E. of at least 0.08. Lastly, the trial court did not enter inconsistent judgments.

[27] Affirmed.

Kirsch, J., and Brown, J., concur.