**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-4326**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CARL KOTAY GRAHAM,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Durham.   James A. Beaty, Jr., Chief District Judge.   (1:06-cr-00267-JAB)

Submitted:  October 10, 2008          Decided:  November 6, 2008

Before WILLIAMS, Chief Judge, and TRAXLER and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

A. Wayne Harrison, Sr., Greensboro, North Carolina, for Appellant.  Anna Mills Wagoner, United States Attorney, Lisa B. Boggs, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Carl Kotay Graham appeals his conviction for possession with intent to deliver 12.2 grams of crack cocaine, see 21 U.S.C.A. § 841 (West 1999 & Supp. 2008), challenging the sufficiency of the evidence presented against him. Finding no error, we affirm.

I.

Because Graham challenges the sufficiency of the evidence to support his conviction, we summarize the evidence presented at trial, as well as the inferences flowing therefrom, in the light most favorable to the government. See Glasser v. United States, 315 U.S. 60, 80 (1942). On June 22, 2006, Greensboro (North Carolina) Police Department officers obtained information from a confidential informant ("Truck") regarding a drug transaction that was to take place in downtown Greensboro. Officer Alston met with Truck, discussed what he needed to do to help the police, and searched him and his car. Several officers then followed Truck to a Hardee's restaurant where the transaction was to occur and set up surveillance across the street.

Truck, driving a Cadillac, parked in the Hardee's parking lot near a phone booth and remained there until a silver Hyundai arrived. Truck then exited his vehicle and opened the trunk,

2

thereby signaling the officers to move in. As they did, one police vehicle pulled in behind the Hyundai, blocking it in, while another, a Ford Expedition, attempted to block the Hyundai's passenger-side door. The passenger in the Hyundai, later identified as Graham, opened the door before the Explorer could block it, exited the vehicle, and commenced running through the parking lot with his hands on his pants as if he were trying to prevent something from falling out. Upon seeing the officers, he pulled a medium-sized plastic bag from his pants, ripped it open, and started dumping its white, powdery contents onto a gravel lot. Officers later collected the contents, which the State Bureau of Investigation ("SBI") laboratory determined to be 91.5 grams of cocaine hydrochloride.

While officers were collecting the cocaine, Officer Hill noticed a white substance in a plastic bag on the ground between the Hyundai's passenger door and the bumper of the Ford Expedition that had been used to try to block the door. The substance was collected, as were two cell phones found on the ground near the Hyundai's passenger door. The cell phones were later linked to Graham when he gave the officers his cell phone numbers. One of the numbers corresponded to one of the phones, and the other was one digit off from the number of the other phone. The SBI laboratory determined that the white substance found in the plastic bag was 12.2 grams of cocaine base (crack

3

cocaine).  Sergeant Tom Kroh opined that the value of the crack cocaine was $60-$100 per gram.

Graham was arrested and advised of his rights, after which he admitted that he had bought approximately 15 ounces of powder cocaine about two weeks before and had been gradually selling it.  Graham further admitted that he had come to Hardee's to sell four ounces of powder cocaine to Truck for $3,000 and that he had sold five more ounces of powder cocaine earlier in the day.  Graham was not asked about the crack cocaine found near where he had exited the Hyundai.

The driver of the Hyundai was Brandi Hancock, a girlfriend of Graham's.  Graham called Hancock several times from the Forsyth County Jail, where he was incarcerated.  These calls were recorded, and during some of them, Graham instructed Hancock regarding the substance of her testimony.  He told her, "Listen and pay attention . . . .  This is how it is going to work."[*]  He then told her that if it appeared that charges against her would not be dismissed, Graham would represent that Hancock did not know anything about his illegal activities since she could not be criminally liable for a conspiracy that she did not know about.  He also told her that they would "have to help

---

[*] The tapes of the conversations were not transcribed, but the tapes were in evidence in the district court.

each other," and that if she were subpoenaed, she should say, "Nah, that ain't what I said and I didn't see it." Graham added, "You know what I am saying."

During a separate phone conversation, Graham inquired about discussions Hancock had with the police. Graham asked Hancock what she had said about how the two of them had met, how long they had known each other, and whether she had been asked if she had ever seen him do anything illegal. Graham told her,

> You did not know what was going on, you did not ask me what was going on, you know what I am saying. And the next thing you know they just came, you know what I am saying. You did not see nothing, you did not hear nothing. You know what I am saying. . . . And I promise you will be alright.

Hancock then asked Graham if he had had crack cocaine, to which he responded, "'B,' listen, don't worry about that."

During another call, Graham asked Hancock which way Truck ran when the police moved in, and Hancock told him he went left. Graham informed her he was going to trial and stated, "I pled guilty to that powder, man, but they [are] trying to say that I had some crack on me, man. My only defense is you . . . . I need them to know, listen now, I need them to know that [Truck] ran by the passenger door." Graham also told her, "I need you to let them know that you were not supervised for at least 2-3 minutes, do you understand." He later stated, "You my only defense, don't you understand that? . . . If I lose, man I'm

gone, man, it's over, bye, see you next lifetime . . . . It's the crack that's giving me, making me face this time."

A federal grand jury returned a two-count bill of indictment against Graham. Count One charged possession with intent to deliver 12.2 grams of crack cocaine. Count Two charged possession with intent to deliver 91.5 grams of cocaine hydrochloride.

Graham pleaded guilty to Count Two and proceeded to a bench trial on Count One. At the close of the evidence, Graham moved unsuccessfully for a judgment of acquittal. See Fed. R. Crim. P. 29. The district court subsequently found Graham guilty on Count One:

> Based upon all the evidence that's been presented, although it is circumstantial, the Court finds beyond a reasonable doubt that the 12.2 grams of cocaine base, crack, found in the area where [Graham] exited the vehicle and where his cell phones were located, was in [Graham's] possession and was knowingly and intentionally possessed by him with intent to distribute cocaine base, crack. The Court further finds the evidence establishes beyond a reasonable doubt, although circumstantially, that [Graham] knew that what he possessed was a controlled substance.

J.A. 192. The court imposed a sentence of 360 months' imprisonment.

II.

Graham challenges the sufficiency of the evidence to support the district court's finding that he possessed with

6

intent to deliver the 12.2 grams of crack cocaine. We must sustain the verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser, 315 U.S. at 80. We are prohibited from "overturn[ing] a substantially supported verdict merely because [we] . . . determine[] that another, reasonable verdict would be preferable. Rather, we shall reverse a verdict if the record demonstrates a lack of evidence from which a [factfinder] could find guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996); see United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994) (explaining that it is within the province of the factfinder, not the appellate court, to "resolve[] any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the [factfinder] decides which interpretation to believe" (citation omitted)). Accordingly, in the context of a challenge to the sufficiency of the evidence, our task as an appellate court is simply to determine whether, in light of the evidence presented at trial, the district court "could rationally have reached a verdict of guilt beyond a reasonable doubt." United States v. Powell, 469 U.S. 57, 67 (1984). Because we consider the evidence in the light most favorable to the government, granting "the government the benefit of all reasonable inferences from the facts proven to those sought to be established," United

States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982), Graham must carry an imposing burden to successfully challenge the sufficiency of the evidence, see United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997).

He has not carried that burden in this case. At the time of the offense, three people were present in the immediate area of the drug transaction, Truck, Hancock, and Graham. Officers had searched Truck prior to the transaction to ensure that he did not have any drugs. As for Hancock, she testified that she did not have any drugs when she drove Graham to the Hardee's. That left only Graham. While officers did not actually see Graham drop the crack cocaine, his cell phones were found in close proximity to the drugs, and he was seen running from the car, holding his pants as if he were trying to keep something from falling out. And, it was highly unlikely that someone else would have left drugs valued at hundreds of dollars on the ground, especially in the very area where Graham had been.

The evidence of Graham's phone conversations with Hancock further supported the conclusion that the crack cocaine belonged to Graham. Attempting to influence a witness's testimony is evidence of a defendant's consciousness of his guilt. See United States v. Van Metre, 150 F.3d 339, 352 (4th Cir. 1998). Here, the district court could reasonably have found that Graham was attempting to shape Hancock's testimony regarding his

possession of the crack cocaine.  And, we conclude that that evidence, taken together with the other evidence discussed herein, justified the district court's determination that Graham had possessed the crack cocaine.

### III.

In sum, we conclude that the evidence was sufficient to support the district court's finding of guilt on Count One.  We therefore affirm Graham's conviction.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>