# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH
### NO. 2-09-303-CR


LEON OTIS COLLINS JR.                                APPELLANT

V.

THE STATE OF TEXAS                                  STATE

------------

### FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

A jury convicted Appellant Leon Otis Collins, Jr. of two counts of sexual assault of a child and one count of prohibited sexual conduct and assessed his punishment at twenty years' confinement for each sexual assault count and ten years' confinement for the prohibited sexual conduct count. The trial court sentenced Collins accordingly, ordering that the sentences for the sexual assault

---

[1]*See* Tex. R. App. P. 47.4.

counts run consecutively. In four points, Collins argues that the evidence is legally and factually insufficient to support his convictions and that he was denied his state and federal constitutional protections against double jeopardy. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Chancel Nash was born on November 10, 1985.[2] She was approximately five years old when her mother, Dionne, first met Collins. Dionne and Collins married when Chancel was nine years old, and the family, including Chancel's two brothers, moved from Tyler to Fort Worth.

Collins began making suggestive comments to Chancel when she was nine or ten years old.[3] Chancel reported the comments to Dionne and a pastor, but they responded that she had probably misunderstood Collins's statements. After some time, Collins continued making suggestive comments to Chancel and also began making physical contact with her.[4]

---

[2]Chancel was twenty-three years old at the time of trial.

[3]According to Chancel, "[Collins] started making comments toward me, like, 'Can you take a bath,' or, 'What you doing,' or if he knew that I was undressing, he would open the door."

[4]Chancel testified, "Like I would walk by him too close, he would touch me on my behind, or he would like grab my arm to get me to stand by him or - - and just the comments."

The contact escalated to sexual intercourse on a regular basis when Chancel was thirteen or fourteen years old.[5] Chancel became pregnant for the first time at age thirteen. She testified that she was not having sexual intercourse with anyone but Collins at that time and that she ended the pregnancy with an abortion. Collins resumed having sex with her after she recovered.[6]

Chancel became pregnant a second time while she was attending junior high. She testified that she was sexually active with other boys at the time, that she did not know who the father was, and that she had another abortion.

She became pregnant a third time at age sixteen. She testified that Collins was the father and that she again had an abortion.

At age seventeen, Chancel became pregnant a fourth time. She carried the baby, C.M., to term because she was told that she would not be able to have any more children if she continued having abortions.[7] Chancel thought that her boyfriend, Floyd, was C.M.'s father, but she also thought that Collins could be the father. A paternity test confirmed that Collins is C.M.'s father.[8]

---

[5]Chancel testified that when Collins first began having sex with her, he told her that he had to "check" her for a disease by using his penis to "check" her vagina. Afterward, Collins claimed that by her having sex with him, he had removed the disease from her.

[6]Chancel testified that the sexual intercourse would occur when her mother was at work and when her brothers were upstairs or outside.

[7]C.M. was born on June 4, 2004.

[8]The DNA test excluded 99.9995% of the population from being C.M.'s biological father.

3

Collins continued having sex with Chancel soon after she gave birth to C.M., and she became pregnant a fifth time and had another abortion.

Chancel reported what Collins had done to her the last time that she had an abortion, but she never heard anything about any ensuing investigation. Later, Chancel's boyfriend, Willie, encouraged her to report Collins's conduct to the police, which she did.

Chancel testified that over the course of all the sexual assaults, she tried to fight Collins off on only one occasion. She stated that her mother and Collins had made the decisions where she would have the abortions and that they paid for them. Chancel testified that she lied to the clinics about the abuse and that she would tell them that it was her first or second time to have an abortion. She told her friend, Kendra, about Collins's conduct, and she stated that Dionne also knew about it. She did not deny that she had sex with other boys when she was a teenager.

The jury convicted Collins of two counts of sexual assault of a child (counts three and four) and one count of prohibited sexual conduct (count five) but acquitted him of aggravated sexual assault (count one) and one count of sexual assault of a child (count two). Collins appeals.

4

## III. EVIDENTIARY SUFFICIENCY

In his first, second, and third points, Collins argues that the evidence is insufficient to support his convictions for sexual assault of a child and for prohibited sexual conduct.[9]

### A.    Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.  The trier of fact is the sole judge of the weight and credibility of the evidence.  *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and

---

[9]Collins does not specifically identify whether he is raising a legal and factual sufficiency challenge or only a factual sufficiency challenge.  We will liberally construe Collins's argument as raising both a legal and factual sufficiency challenge.

substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417. Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246.

**B.    Legally and Factually Sufficient Evidence Supports the Convictions**

A person commits the offense of sexual assault of a child if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a

6

child by any means.  Tex. Penal Code Ann. § 22.011(a)(2) (Vernon Supp. 2009).

A child is defined in section 22.011 as a person younger than seventeen years of

age.  *Id.* § 22.011(c)(1).  A person commits the offense of prohibited sexual

conduct if the person engages in sexual intercourse with another person the

actor knows to be, without regard to legitimacy, the actor's current or former

stepchild.  *Id.* § 25.02(a)(2) (Vernon Supp. 2009).

> Count three alleged the offense of sexual assault of a child as follows:
>
> And it is further presented in and to said court that the defendant in the County of Tarrant and State aforesaid on or about the 1st day of January, 2001, did then and there intentionally or knowingly cause the penetration of the female sexual organ of [Chancel], a child younger than 17 years of age who was not the spouse of the said defendant by inserting his penis into her female sexual organ[.]

Count four alleged the offense of sexual assault of a child as follows:

> And it is further presented in and to said court that the defendant in the County of Tarrant and State aforesaid on or about the 1st day of January, 2002, did then and there intentionally or knowingly cause the penetration of the female sexual organ of [Chancel], a child younger than 17 years of age who was not the spouse of the said defendant by inserting his penis into her female sexual organ[.]

Count five alleged the offense of prohibited sexual conduct as follows:

> And it is further presented in and to said court that the defendant in the County of Tarrant and State aforesaid on or about the 4th day of September, 2003, did then and there intentionally or knowingly engage in sexual intercourse with [Chancel], a person the said defendant knew to be his step-daughter[.]

The record demonstrates that Chancel was born on November 10, 1985.

Therefore, on or about January 1, 2001, she was fifteen years old, and on or

about January 1, 2002, she was sixteen years old.  Chancel testified that Collins

had intercourse with her on a regular basis beginning when she was thirteen or fourteen years old and ending when she was nineteen years old. She described the intercourse as consistent and testified that Collins had sex with her at least once a month until she was age seventeen. Chancel stated that there was never a year between when the sexual intercourse began and when it ended that it stopped. A paternity test revealed that Collins is C.M.'s father.

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that Collins committed the offenses of sexual assault of a child as alleged in counts three and four and the offense of prohibited sexual conduct as alleged in count five. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. Accordingly, we hold that the evidence is legally sufficient to support Collins's convictions.

Collins contends that Chancel's testimony lacked credibility because of "the lateness of her report," "repeated denials over the c[o]urse of several years[,]" "so many lies," and "the existence of other potential sexual partners." He argues that "[t]he lack of credibility is shown by the jury's acquittals of the Appellant as to both Counts 1 and 2."

Collins's arguments ignore the factual sufficiency standard of review, which requires us to defer to the jury's determinations concerning the weight and credibility of the evidence. *See Johnson*, 23 S.W.3d at 9; *see Steadman*, 280 S.W.3d at 246. Chancel's testimony regarding exactly when the sexual assaults occurred was somewhat vague at times, but the jury was free to resolve the

conflicts in the evidence, if any, in favor of the State. Further, as the State points out, our review of the sufficiency of the evidence to support Collins's convictions for sexual assault and for prohibited sexual conduct proceeds independent of the jury's determinations to acquit Collins of counts one and two. *See U.S. v. Powell*, 469 U.S. 57, 67, 105 S. Ct. 471, 478 (1984).

Viewing all the evidence in a neutral light, favoring neither party, the evidence supporting Collins's convictions is not so weak that the jury's determinations are clearly wrong and manifestly unjust, nor does the conflicting evidence so greatly outweigh the evidence supporting the convictions that the factfinder's determinations are manifestly unjust. *See Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, we hold that the evidence is factually sufficient to support Collins's convictions, and we overrule Collins's first, second, and third points.

## IV. DOUBLE JEOPARDY

In his fourth point, Collins argues that he was denied his state and federal protections against double jeopardy because "all count 5 . . . does is reprosecute [him] for sexual intercourse already alleged in both Counts 3 and 4." *See* U.S. Const. amends V, XIV; Tex. Const. art. I, § 14. Collins thus raises a multiple-punishments double jeopardy argument. The State responds that Collins failed to preserve this point for appellate review. We agree.

Generally, to preserve a double jeopardy claim, a defendant must object at or before the time the charge is submitted to the jury. *Gonzalez v. State*, 8

9

S.W.3d 640, 642 (Tex. Crim. App. 2000). An appellant is excused from the preservation requirement, however, when (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and (2) enforcement of usual rules of procedural default serves no legitimate state interest. *Id.* at 643. A double jeopardy multiple-punishment violation is clearly apparent on the face of the record when the record affirmatively shows multiple punishments resulting from the commission of a single act that violated two separate penal statutes, one of which is, on its face, subsumed in the other. *Cervantes v. State*, 815 S.W.2d 569, 572–73 (Tex. Crim. App. 1991), *cert. denied*, 502 U.S. 1110 (1992); *Hanson v. State*, 180 S.W.3d 726, 732–33 (Tex. App.—Waco 2005, no pet.).

In this case, count three alleged that Collins committed the offense of sexual assault of a child on or about January 1, 2001; count four alleged that he committed the offense of sexual assault of a child on or about January 1, 2002; and count five alleged that he committed the offense of prohibited sexual conduct on or about September 4, 2003.[10] The sexual assaults described in counts three and four and the prohibited sexual conduct described in count five each address separate incidents and conduct that occurred on distinctly different dates.

---

[10]It is well established that the "on or about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is prior to the presentation of the indictment and not so remote that prosecution is barred by the statute of limitations. *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997).

10

Chancel testified that Collins began having sexual intercourse with her when she was thirteen or fourteen years old and that the intercourse stopped when she was nineteen years old. She stated that Collins had sexual intercourse with her at least once a month until she reached age seventeen. She also testified that Collins "consistently" had intercourse with her from age thirteen or fourteen until after C.M. was born. C.M. was born on June 4, 2004, approximately nine months after September 4, 2003. Collins is C.M.'s father.

We conclude that it is not clearly apparent on the face of the record that Collins has suffered multiple punishments for the same conduct in violation of his state and federal guarantees against double jeopardy. *See Cervantes*, 815 S.W.2d at 572–73; *Bracy v. State*, No. 05-08-00144-CR, 2009 WL 1364412, at *2 (Tex. App.—Dallas May 18, 2009, pet. ref'd) (not designated for publication) (holding that face of record did not demonstrate a multiple-punishments violation in part because appellant began sexually molesting his daughter in 2005, continued to do so for two years, and admitted that he had molested her so many times that he had lost count). Thus, Collins has failed to meet the first prong of the exception to the preservation requirement. *See Gonzalez*, 8 S.W.3d at 643. Accordingly, we hold that Collins failed to preserve this point for appellate review. We overrule Collins's fourth point.

## V. CONCLUSION

Having overruled all four of Collins's points, we affirm the trial court's judgments.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 31, 2010