AMBRO, Circuit Judge,
concurring.
I concur with the judgment in this case, but do so for the alternate reason given by colleagues: there was no prejudice to Holmes by the conduct of his counsel at trial. I part with my colleagues in their view that the concession of guilt made by Holmes’ trial counsel was “a well reasoned decision as to how to proceed in Holmes’ best interest,” and thus not deficient under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[1]
To review the bidding, Count 1 of the charges against Holmes was that he conspired to distribute more than (i) 600 kilograms of cocaine and (ii) 400 kilograms of *553 cocaine base (or crack). As noted in the majority opinion, a conviction of this count carries a maximum sentence of life.
Count 120 charges conspiracy to possess a firearm in furtherance of a drug trafficking crime. That conspiracy, though it resulted in the death of a rival gang member, nonetheless carried a maximum sentence of 20 years.
Count 120 had three elements, the first of which was that Holmes knowingly committed a drug-trafficking crime. You don’t have to imagine what that drug-trafficking crime was — the conspiracy to distribute cocaine and crack as charged in Count 1.
Mr. Warren, Holmes’ court-appointed counsel, was between a rock and a hard place. He had a client who would not cut a plea deal, yet that client, a convicted felon, had made a lengthy statement to a law enforcement official (Agent Tropea) admitting that he had carried a gun and acted as a “gunman” for a group “hustling” drugs. Plus there were three alleged co-conspirators testifying against Warren’s client.
Reading the trial transcript shows Warren doing his best to escape the overwhelming evidence against Holmes. Among other things, Warren resorted to the typical tactic of conceding a lesser charge to gain credibility with the jury in the effort to gain acquittal on the greater charge. (This is known as a “compromise verdict.”)
In Warren’s jury summation, the following passage in particular concedes guilt on count 120:
[Holmes] got out there, even though — I do agree with the prosecutor. Even though he didn’t get out of the car, that’s not a defense. Conspiracy is an agreement to do it .... But he went out there. He did go out there. That’s the essence or the gist of count 120 .... Now, I’m not asking you to like Robert Holmes. I’m not asking you to condone what he did. I’m not asking you do to anything of the sort. All I’m asking you to do is to hold him legally responsible for what he did, for what they proved he did. And what they proved he did, folks — and these are the only, only unequivocal facts in this case — he was dealing what? They caught him with $20 worth of dope on October 4, 1999— actually, there are three — two, he was involved with the thing at Fatima’s; and three; he was involved reluctantly with ivhat occurred at 58th and Willows [Streets] [the crime alleged in count 120].
Now, ladies and gentlemen, those are three unequivocal facts. They are not contradicted by statements given to Agent Tropea. They are not contradicted by prior sworn testimony. And they are sufficient to support a conviction on count 120.
(App. 974-75, 978) (emphases added).
This, however, was not a typical case, something I am not sure counsel realized at the time he made the statements at trial. But the jury realized quickly the trap Warren had placed for his client, for it went back to the trial judge — not once, but twice — and pointed out, in effect, that no compromise was possible because it was instructed that, in order to find guilt on Count 120, it had to find that the Government had proved beyond a reasonable doubt that the “defendant knowingly committed a drug-trafficking crime, which in this case the Government has alleged to be the conspiracy to distribute cocaine and cocaine base as charged in Count One.” (App.1020) (emphasis added).[2] Given its *554 unusual nesting of the greater count within the lesser conceded count, we have a rare situation in which Warren’s trial strategy-amounted to asking the jury for an inconsistent, rather than a compromise, verdict.[3]
While Warren surely faced an uphill (I think unwinnable) battle, and indeed began his representation under the impression that Holmes would enter into a plea agreement, that agreement did not occur. In these unique circumstances, the tactic Warren tried at trial was illogical, and thus unreasonable. However, like my colleagues, I do not find that it prejudiced Holmes in light of the overwhelming evidence against him.

. I agree with my colleagues that Strickland, which requires prejudice to accompany deficient performance, is the test to apply. I also agree that counsel’s performance at trial here does not approach the fault needed to forgo, under United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), a prejudice assessment.

. Warren was aware later of this unique situation, as the following colloquy between *554 Holmes’s new counsel and Warren reveals at Holmes' habeas hearing.
Q. Count 1 and Count 120.
A. Sure.
Q. Interesting and unique arrangement of these crimes where the ... count with the more significant sentencing consequences is essentially an element of the count with lesser sentencing consequences; right?
A. Correct.
Q. This is not your typical case where you’ve got a conspiracy and perhaps a possession with intent to deliver count and you might take responsibility on the one count, but then argue as to the conspiracy; right?
A. Correct.
Q. So this is maybe the reverse of the typical situation where you might have a concession.?
A. Correct.
Q. And you obviously were aware of that, that guilt on Count 1 was an element of guilt on Count 120.
A. Sure.
Q. So the fine line that you were trying to walk, you understood there was a significant risk that the jury would see a suggestion of guilt on Count 120 and also be aware of guilt or make a finding of guilt on Count 1?
A. Sure.
Q. You said on your direct examination that this was not really a concession, it was more of a suggestion.
A. Correct.
Q. Did you put up much of a fight on Count 120 in your argument?
A. In all candor, no.
Q. Now, when you did that, though, you were aware that the Judge was going to instruct the jury that you can’t be found guilty of Count 120 unless you're guilty of Count 1. A. Correct.
Q. And you also were aware of the standard instructions given by the Court that if you find proof beyond a reasonable doubt as to each of the elements, you’ve got to find the defendant guilty; right?
A. Yes.
(App. 58-59, 63) (emphases added).

. We read too much into United States v. Powell, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), if we sanction it as a trial strategy. Warren acknowledged as much at the evidentiary hearing in the District Court: "I’m not saying Powell is a recognized legal strategy____ All Powell says is you can't do anything with it on appeal, all right, but it recognizes the idea of compromise verdicts." (App. 64-65.) As my colleagues and I point out, the jury was troubled by the logical inconsistency inherent in Warren’s argument. I also note that the trial judge gave the jury a standard instruction regarding its duty to follow the law: "I instruct you that you must accept the rules of law as I’ve given them to you, regardless of whether you agree with them or not, and apply the law as I’ve stated it to the facts that you find." (App. 1023.) In other words, jurors, who know nothing about the nuances of Powell, simply must follow an instruction on law given them no matter how inconsistent (or compromised) it is. Thus, when the jury pointed out the inconsistency here, it was told that "the law, as the U.S. Supreme Court has construed it, allows it." (App. 1033.)