**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-13888

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DAVID BYRON COPELAND,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cr-00165-MSS-AAS-3

_____

Before NEWSOM and BRASHER, Circuit Judges, and HUCK,* District Judge.

PER CURIAM:

_____

* Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

After trial in the Middle District of Florida, a jury found David Copeland guilty of two substantive counts of soliciting and receiving health care kickbacks and bribes, in violation of 42 U.S.C. § 1320a-7b(b)(1) and 18 U.S.C. § 2, and three substantive counts of offering and paying health care kickbacks and bribes, in violation of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2. The jury found Copeland not guilty of conspiracy to defraud the United States and to receive and pay healthcare kickbacks, in violation of 18 U.S.C. § 371. The district court sentenced Copeland to a below the guideline range of 51 months of imprisonment, to be followed by three years of supervised release. Copeland appeals both his convictions and sentence.

Copeland presents four arguments on appeal. First, as to the verdict, Copeland argues that the evidence was insufficient to support his convictions on the five substantive counts because he was acquitted of the conspiracy count, demonstrating an inconsistency in the jury verdicts. Second, as to his sentence, Copeland argues that the district court erred by (1) finding that Copeland qualified for an aggravating role enhancement as a manager or supervisor under U.S.S.G. § 3B1.1(b); (2) finding that Copeland was not entitled to a reduction in his offense level under U.S.S.G. § 4C1.1 because he was not a zero-point offender; and (3) finding that Copeland was not entitled to a reduction in his offense level under U.S.S.G. § 3E1.1(a) because he did not clearly demonstrate acceptance of responsibility over his offenses.

We disagree with Copeland on each issue and **AFFIRM** Copeland's convictions and sentence.

## I.

This case arises out of an illegal scheme to pay and receive kickbacks in violation of the Anti-Kickback Statute involving Florida Pharmacy Solutions, Inc. ("FPS") and the TRICARE federal health care benefits program. Copeland, together with his co-defendant James Moss, were the sole owners and officers of FPS, a pharmacy that specialized in expensive compounded prescription pain and scar creams. TRICARE is a federal healthcare benefit program that is administered by the Department of Defense ("DOD") and provides coverage to military service-members and their families. FPS produced the compounded prescription creams, and, through FPS's sales representatives, marketed the creams to beneficiaries of TRICARE. In return, TRICARE would reimburse FPS.

On May 27, 2020, a superseding indictment charged Copeland with one count of conspiring to defraud the United States and to receive and pay healthcare kickbacks, in violation of 18 U.S.C. § 371 and 42 U.S.C. § 1320a-7b(b)(l), (2) (Count I); two counts of receiving healthcare kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1) and 18 U.S.C. §2 (Counts II and III); and three counts of paying healthcare kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2 (Counts IV through VI). The facts alleged in the superseding indictment are summarized as follows. Between 2012 and 2015, Copeland, Moss, and others associated

with FPS would solicit medical providers to prescribe FPS's expensive compounded creams for use by TRICARE beneficiaries, which prescriptions were then sent to FPS to be filled. TRICARE would then pay for those prescriptions. These prescriptions were procured by direct and indirect payments of bribes and kickbacks to medical providers in order to induce them to prescribe FPS's compounded creams and to have the creams be filled by FPS. As part of that scheme, FPS paid kickbacks to Copeland and others. In addition, Copeland, through FPS, paid kickbacks to co-Defendant Gordon and other sales representatives on Copeland's sales team.

The Government presented the following evidence at trial.

Moss testified that he and Copeland communicated with each other almost every day by phone and text, and that he conspired with Copeland to pay bribes and kickbacks to doctors, which included hunting trips, fishing trips, and trips to a casino, in exchange for the doctors continuing to write prescriptions for compounded creams to be filled by FPS. Moss testified that he discussed the hunting trips with Copeland, that Copeland asked Moss to pay for the hunting trips, and that the hunting trips Copeland went on were with doctors in Copeland's sales territory. Moss testified that Copeland both solicited doctors directly and oversaw his sales team's solicitations. Both Copeland and his sales team members were paid by commission, meaning they were paid a percentage of the money generated from the prescriptions they secured. Copeland received a commission on both his own sales and those

of his sales team. Moss testified that Copeland, as co-owner, also received dividends from FPS.

Moss also testified that on one occasion he texted Copeland about the expenses incurred for a hunting trip on which Eddie Jackson, a member of Copeland's sales team, had taken three doctors, and which trip Copeland had approved. Moss testified that the hunting trip was a bribe for the doctors. Moss also testified that Rebekah Davis, another member of Copeland's sales team, organized a wine and paint party for 12 to 15 nurses with the expectation that it would induce the nurses to write prescriptions for FPS's compounded creams, and that Copeland was aware of the party and did not object to it. Moss also testified that in order to resolve a dispute between Copeland and Gordon regarding Copeland's sales territory, FPS allocated a portion of Gordon's commissions to Copeland. Moss also testified that Copeland's contract with FPS required him to comply with applicable laws, including the Anti-Kickback Statute.

Gordon testified that he was paid by Copeland to solicit prescriptions from medical providers. He testified that he gave medical professionals breakfasts, lunches, dinners, and hunting trips to induce them to write prescriptions for TRICARE beneficiaries and send those prescriptions to FPS. Gordon testified that he discussed the details of these inducements with Copeland, including notifying Copeland when Gordon took doctors out to various dinners and when Gordon was successful in getting the doctors to submit prescriptions for FPS's compounded creams. Gordon testified that

Copeland never told him to stop hosting the dinners. Gordon further testified that he took a doctor on a hunting trip to induce the doctor to continue writing prescriptions for FPS's compounded creams, and that he was reimbursed by FPS for the entire trip.

Robert Matteis, a DOD special agent who investigated FPS, testified that he asked Copeland if anyone at FPS paid kickbacks to induce doctors to write prescriptions, which Copeland denied. Matteis testified that Copeland later acknowledged that an FPS salesman had taken doctors on hunting trips but denied participating in them, and stated that he only knew that FPS provided lunches to doctors.

Trenton Thiede, an owner of a pharmacy-consulting company that produces and administers compliance training courses, testified that his company provided a fraud, waste, and abuse compliance training course for FPS. Thiede testified that Copeland had taken the course, which specifically covered the Anti-Kickback Statute, had passed the qualifying examination, and had taken an additional refresher course.

At the close of the Government's case, Copeland moved for a judgment of acquittal on Counts II and III. In support of his motion, Copeland argued only that there was no evidence that the payments on which Counts II and III were based came from TRICARE funds. Noteworthy here, Copeland did not contend that the Government failed to prove he had the requisite *mens rea* as to any count. The district court denied the motion for judgment of acquittal. Copeland rested without presenting any evidence. The

jury convicted Copeland of the five substantive counts and acquitted Copeland of the conspiracy count.

Copeland's presentence investigation report found that based on Copeland's relevant conduct, his base offense level was eight per U.S.S.G. §2B4.1(a). Pursuant to USSG §2B4.1(b)(1), Copeland's offense level was increased by eighteen levels because the monetary loss as a result of the kickback scheme was $9,359,660.80. Copeland received a three-point aggravating role enhancement pursuant to U.S.S.G. §3B1.1(b), as a manager or supervisor, and because the criminal activity involved five or more participants or was otherwise extensive. Copeland did not receive a downward adjustment for acceptance of responsibility. Therefore, Copeland's adjusted base offense level was twenty-nine. Accordingly, the guideline imprisonment range was 87 to 108 months, with a statutory maximum of ten years imprisonment.

On November 14, 2023, the district court held a sentencing hearing. First, the district court found that Copeland was responsible for a total loss amount of $2,660,666.67, which reduced Copeland's offense level to twenty-seven. The district court overruled Copeland's objections concerning the aggravating role adjustment and determined that Copeland was not a zero-point offender. This resulted in an advisory guideline range of 70 to 87 months imprisonment. The district court imposed a sentence of 51 months of imprisonment for Counts II through VI, followed by three years of supervised release, with all terms to run concurrently. Copeland appealed his conviction and sentence.

## II.

We first address Copeland's contention that the jury's verdict as to the five substantive counts was unsupported by sufficient evidence. Specifically, Copeland argues that because the jury found he did not have specific intent to support the conspiracy count, it necessarily follows that he did not have the requisite *mens rea* to support the jury's verdicts as to the five substantive counts.

Typically, we "review the sufficiency of evidence to support a conviction de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Gatlin*, 90 F.4th 1050, 1059 (11th Cir. 2024), *cert. denied sub nom.*, 145 S. Ct. 1065 (2025) (quoting *United States v. Taylor*, 480 F.3d 1025, 1026 (11th Cir. 2007)). However, where, as here, a specific challenge to the sufficiency of the evidence was not raised in the district court, as is the case for Copeland's contentions regarding Counts II and III, we review for plain error. *See United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016) (reviewing for plain error when a defendant "raises specific challenges to the sufficiency of the evidence in the district court, but not the specific challenge he tries to raise on appeal"). Furthermore, because Copeland did not move for judgment of acquittal as to Counts IV, V, and VI, Copeland has the "heavier burden" of showing manifest miscarriage of justice. *United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006). Thus, where a defendant does not move for judgment of acquittal in the district

court, "we will reverse the conviction only where doing so is necessary to prevent a manifest miscarriage of justice." *Id.*; *see also United States v. Thompson,* 610 F.3d 1335, 1338 (11th Cir. 2010).

To establish his eligibility for plain-error relief, Copeland must satisfy three threshold requirements. First, Copeland must establish that there was an error. Second, Copeland must establish that the error was plain. Third, the error must have affected Copeland's "substantial rights," meaning that Copeland must show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles v. United States*, 585 U.S. 129, 135–36 (2018). If the first three requirements are satisfied, a court "may exercise its discretion to notice a forfeited error, but only if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Hawkins*, 934 F.3d 1251, 1264 (11th Cir. 2019). It is the defendant's burden to establish all four requirements. Satisfying all four prongs of the plain-error test "is difficult." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

Particularly relevant here, a review of the sufficiency of the evidence as to one count is "independent of the jury's determination that evidence on another count was insufficient." *United States v. Powell*, 469 U.S. 57, 67 (1984); *see also United States v. Veal*, 153 F.3d 1233, 1252 (11th Cir. 1998) (explaining that appellants' contention that acquittal on their conspiracy counts establishes insufficiency of the evidence to support appellants' substantive counts "improperly

conflates the distinction between insufficiency of the evidence and inconsistent verdicts").[1]

To support a conviction under the Anti-Kickback Statute's provision prohibiting the receipt of bribes or kickbacks, 42 U.S.C. § 1320a-7b(b)(1), the Government must prove that a defendant: "(1) knowingly and willfully (2) solicited or received money (3) for referring individuals to a health care provider (4) for the furnishing of services to be paid by [a Federal health care program]." *United States v. Nerey*, 877 F.3d 956, 968 (11th Cir. 2017). To support a conviction under the Anti-Kickback Statute's provision prohibiting the paying of bribes or kickbacks, 42 U.S.C. § 1320a-7b(b)(2), the Government must prove that a defendant (1) "knowingly and willfully" (2) paid money, directly or indirectly (3) to induce an individual "to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program[.]" 42 U.S.C. § 1320a-7b(b)(2); *see also United States v. Vernon*, 723 F.3d 1234, 1252 (11th Cir. 2013). To satisfy the Anti-Kickback Statute's *mens rea* requirement, a defendant does not need to have specific intent to violate the Statute. *See* 42 U.S.C. § 1320a-7b(h). Rather, willful conduct under the Anti-Kickback Statute simply means that the act was "committed voluntarily and purposely, with the specific intent to do something the law forbids, that is with a bad purpose, either to disobey or disregard the law." *Nerey*, 877 F.3d at 969

---

[1] We note that the Defendant failed to respond to the Government's arguments regarding the application of *United States v. Powell*, 469 U.S. 57 (1984).

(quoting *Vernon*, 723 F.3d at 1256). And we have held that the government may rely entirely on circumstantial evidence to secure a conviction for conspiracy to violate the Anti-Kickback Statute. *United States v. Young*, 108 F.4th 1307, 1317 (11th Cir. 2024), *cert. denied*, 145 S. Ct. 1959, 221 L. Ed. 2d 737 (2025); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction").

Copeland has not carried his difficult burden of establishing even the less demanding standard of plain error applicable to Counts II and III. Moreover, Copeland has not carried his more difficult burden of establishing that there was a manifest miscarriage of justice as applicable to Counts IV, V, and VI. Copeland argues that the Government must prove that Copeland knew his conduct specifically violated the Anti-Kickback Statute, citing to *United States v. Starks*, 157 F.3d 833, 838 (11th Cir. 1998). But Copeland ignores key language of *Starks* that squarely forecloses his position: "the giving or taking of kickbacks for medical referrals is hardly the sort of activity a person might expect to be legal[.]" *Id*. at 839 n.8; *see also id*. ("The government produced ample evidence, including the furtive methods by which Siegel remunerated Starks and Henry, from which the jury could reasonably have inferred that Starks and Siegel knew that they were breaking the law—even if they may not have known that they were specifically violating the Anti-Kickback [S]tatute."). That same logic applies here.

The Government presented sufficient evidence at trial showing that Copeland knew that his conduct was unlawful. Moss testified that Copeland's contract with FPS required him to comply with applicable laws, including the Anti-Kickback Statute. Copeland participated in two compliance training courses, passing the qualifying examination at the end of the courses. The Government showed that Copeland specifically knew about and authorized various events in which medical providers were induced with various benefits to prescribe FPS's compounded cream prescriptions for TRICARE beneficiaries: breakfasts, lunches, and dinners, various trips, and the wine and paint party. When questioned by special agent Matteis, Copeland denied that he participated in the trips and stated that FPS only provided lunches to doctors. Based on this evidence, a reasonable jury could find beyond a reasonable doubt that Copeland knowingly paid and received kickbacks with the specific intent to do something the law forbids. *See, e.g., United States v. Sosa*, 777 F.3d 1279, 1294 (11th Cir. 2015). Therefore, Copeland has not carried his burden of establishing that the jury's verdict as to the five substantive counts was not supported by sufficient evidence.

### III.

We now address Copeland's challenges to his sentence.

We review a district court's determination of whether a defendant qualifies for an adjustment under the Sentencing Guidelines for clear error. *United States v. Boyd*, 291 F.3d 1274, 1277 (11th Cir. 2002). Similarly, a district court's determination of whether a

defendant qualifies for an acceptance of responsibility adjustment is reviewed only for clear error. *United States v. Arguedas*, 86 F.3d 1054, 1059 (11th Cir. 1996). "Both the Guidelines and the relevant statutory language also explicitly recognize that a district court's determination of a defendant's role in the offense is essentially factual and that such findings must be afforded deference." *United States v. Rodriguez De Varon*, 175 F.3d 930, 938 (11th Cir. 1999). Therefore, "[s]o long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law . . . it will be rare for an appellate court to conclude that the sentencing court's determination is clearly erroneous." *Id.* at 945.

The district court did not err by concluding that Copeland qualified for an aggravating role adjustment under U.S.S.G. § 3B1.1(b) and that Copeland did not qualify as a zero-point offender under U.S.S.G. § 4C1.1. The Sentencing Guidelines provide that a sentencing court can increase a defendant's offense level by three when "the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). In determining the defendant's role in the offense, the district court must consider several factors, such as:

> The exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense,

> the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4. "There is no requirement that all the considerations have to be present in any one case . . . . [T]hese factors are merely considerations for the sentencing judge, who makes the factual determinations for the applicability of the § 3B1.1 enhancement on a case-by-case basis[.]" *United States v. Ramirez*, 426 F.3d 1344, 1356 (11th Cir. 2005).

Here, the district court did not err—clearly or otherwise—by applying an upward adjustment under U.S.S.G. § 3B1.1. There was ample evidence which indicated that Copeland was a manager or supervisor. Not only was Copeland a co-owner and officer of FPS, but he also supervised his own sales team, including Gordon, Jackson, and Davis. That was more than enough for the district court to conclude that Copeland managed or supervised several other participants in the kickback scheme. *See United States v. Garrison*, 133 F.3d 831, 844-45 (11th Cir. 1998) (affirming district court's finding that a defendant qualified as a manager or supervisor when she "reimbursed" employees and "directed" individuals in the conspiracy). There was also ample evidence that there were five or more participants in the criminal enterprise: the Defendant, his co-Defendants Moss and Gordon, members of Copeland's sales team including Jackson and Davis, and numerous medical providers.

Moreover, FPS's kickback scheme was extensive.[2] For these reasons, the district court did not err in concluding that Copeland qualified for an aggravating role adjustment.

The Sentencing Guidelines provide that a two-point offense level reduction is proper when, among other requirements, the defendant is a zero-point offender; that is, "the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role)." U.S.S.G. § 4C1.1(a)(10). Because the district court properly applied an adjustment for Copeland's aggravating role, it necessarily follows that he was not entitled to a downward adjustment as a zero-point offender.

The district court did not err by concluding that Copeland was not entitled to a two-level reduction to his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a). "U.S.S.G. § 3E1.1(a) instructs the district court to decrease a defendant's base offense level by two if he 'clearly demonstrates acceptance of responsibility for his offense.'" *United States v. Grady*, 18 F.4th 1275, 1290 (11th Cir. 2021) (quoting U.S.S.G. § 3E1.1(a)). The commentary to the Guidelines indicates that a reduction for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential

---

[2] While Copeland argues that the Government needed to prove there were "five or more participants" or that the criminal activity was otherwise extensive, "a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." *United States v. Sosa*, 777 F.3d 1279, 1301 (11th Cir. 2015).

factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Grady*, 18 F.4th at 1290 (quoting U.S.S.G. § 3E1.1(a), cmt. n.2).[3] Rather, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." *Id.*

Here, Copeland elected to go to trial and contest his guilt, placing the burden of proof on the Government. Accordingly, the district court properly determined that Copeland was ineligible for a reduction based on acceptance of responsibility. Therefore, we affirm the district court's determination that Copeland was not entitled to an acceptance of responsibility reduction under U.S.S.G. § 3E1.1(a).

The district court did not err—clearly or otherwise—in its calculation of Copeland's offense level and in sentencing him to a below the guidelines sentence.

## IV.

For the foregoing reasons, we **AFFIRM** Copeland's conviction and sentence.

---

[3] Copeland still does not admit guilt nor express remorse.